**In re Rebecca A. BURG, Debtor.**

**Rebecca Burg, Plaintiff,**

v.

**The City of Buffalo; John G. Schultz; Scott Allan; and Henel–Mattison Holdings, Inc., Defendants.**

**Bankruptcy No. 02–13344 B.**
**Adversary No. 03–1040 B.**

United States Bankruptcy Court, W.D. New York.

July 11, 2003.

Barry H. Sternberg, Amherst, NY, for Debtor/Plaintiff.

Phillips, Lytle, Hitchcock, Blaine & Huber LLP, William J. Brown, of counsel, Angela Z. Miller, of counsel, Buffalo, NY, for Defendants.

Department of Law, City of Buffalo, Jeffrey E. Reed, of counsel, Buffalo, NY.

CARL L. BUCKI, Bankruptcy Judge.

When she filed her petition for relief under chapter 13, Rebecca A. Burg possessed a bundle of interests that derived from her status as both executrix and heir of her deceased mother. In the present dispute, the underlying issue is whether the automatic stay precludes an *in rem* tax foreclosure of a house that the mother owned at the time of her death.

Until her death in 1985, Hilda C. Heckler was the owner of real property at 75 Baxter Street in the City of Buffalo. A last will and testament made no specific provision for this asset, but after payment of all debts, left everything except certain dishes to a daughter, Rebecca Heckler. The will further appointed Rebecca Heckler to serve as executrix. Based upon this provision, the Surrogate issued testamentary letters to Rebecca in October 1985. Nonetheless, she neglected fully to administer the estate and never recorded an executor's deed that would have memorialized the new ownership of the real property. The executrix has resided at 75 Baxter since her mother's death. Thereafter, upon marriage, Rebecca Heckler assumed the name of Rebecca A. Burg.

Since at least the mid–1990's, Rebecca Burg has failed to make timely payment of the real estate taxes for the property at 75 Baxter Street. Seeking to address these delinquencies, Mrs. Burg and her husband filed a petition for relief under chapter 13 on March 19, 1996. In their schedules, Mr. and Mrs. Burg asserted Rebecca's ownership of the property on Baxter Street and duly listed the City of Buffalo as a secured creditor by reason of unpaid property taxes. Upon finding feasibility, this court confirmed a plan which provided for full payment of delinquent taxes. Nonetheless, the City of Buffalo continued an *in rem* proceeding to foreclose its tax lien upon the Baxter Street property. Although the issue was never presented to this court for adjudication during the pendency of the 1996 bankruptcy, the City initially contended that the property was not titled to Rebecca Burg and, accordingly, did not enjoy the protection of the automatic stay. In response, Mrs. Burg's counsel presented to the City a copy of the death certificate for Hilda C. Heckler, together with a copy of Hilda's will. As memorialized by a letter to the City of Buffalo on July 2, 1996, the debtors' counsel ultimately persuaded the municipality to discontinue the *in rem* proceeding and to submit a proof of claim for the outstanding tax delinquencies. In due course through the chapter 13 program, Rebecca Burg satisfied the City's pre-petition claim. After her completion of the plan, the chapter 13 case was closed on April 24, 2001.

With their first bankruptcy petition in 1996, Mr. and Mrs. Burg submitted a budget which allowed for payment of current taxes for the property at 75 Baxter Street. Nonetheless, they neglected to pay any of the taxes that became due during the pendency of that initial bankruptcy proceeding. Upon the closing of that case, therefore, the City of Buffalo commenced a new *in rem* proceeding. To stay this action, Rebecca Burg individually filed the present chapter 13 petition on May 31, 2002. Again asserting ownership of the Baxter Street property, Mrs. Burg listed a secured debt to the City of Buffalo for prop-

erty taxes due for the period from 1996 to 2002. With no opposition from creditors, this court then confirmed a plan providing for full repayment of both unsecured and secured claims. In connection with this second petition, however, the City refused to honor the automatic stay. Subsequent to the bankruptcy filing, it obtained a judgment of foreclosure and pursuant to that judgment, conducted an auction of the premises on October 29, 2002. The successful bidders at that auction were John G. Schultz, Scott Allan, and Henel–Mattison Holdings, Inc. (collectively, the "Purported Purchasers"). Upon learning of these events, counsel for Mrs. Burg contacted the City to demand compliance with the automatic stay. Initially, the City responded by informing the Prospective Purchasers that the sale would be rescinded. However, it reversed this position by letter dated November 19, 2002. Contending that the debtor held no ownership interest in 75 Baxter Street, the City caused the foreclosure referee to execute a deed dated January 13, 2003, which ostensibly conveyed the premises to the Purported Purchasers as tenants in common. The Purported Purchasers then served upon Rebecca Burg a notice to quit the premises. In response, Mrs. Burg presented to this court an *ex parte* application to temporarily restrain the eviction, until such time as the court might consider a motion for a preliminary injunction. Contemporaneously, Mrs. Burg commenced an adversary proceeding against the City of Buffalo and the Purported Purchasers of the property. In this adversary proceeding, Mrs. Burg seeks a permanent injunction, together with a declaratory judgment that would require the City of Buffalo to accept payments through the chapter 13 plan in satisfaction of the outstanding tax deficiencies.

By order dated February 14, 2003, this court temporarily restrained the eviction of Rebecca Burg from 75 Baxter Street, until such time as the court would decide the request for a preliminary injunction. In partial response to that request, the Purported Purchasers moved for relief from the automatic stay. This court has now conducted four hearings on these competing motions and has heard argument from counsel for Burg, for the Purported Purchasers, and for the City of Buffalo. Additionally, the court has allowed to the parties an opportunity to brief the relevant legal issues.

On a basic level, Rebecca Burg correctly asserts her right to a preliminary injunction against an eviction from the property at 75 Baxter Street. Section 362(a)(3) of the Bankruptcy Code provides that a bankruptcy petition operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." That the petitioning creditors have need to obtain an order of eviction is itself an acknowledgment of Mrs. Burg's possession of the property. As an act to obtain possession of property from the estate, the eviction is subject to the automatic stay of bankruptcy. Accordingly, the court will grant the debtor's motion to preliminarily enjoin the eviction proceedings in state court. Pursuant to section 362, the automatic stay continues either until the stay's termination under subdivision (c), or upon modification under subdivision (d). Having cross moved under subdivision (d) for stay relief, the Purported Purchasers now present a more troubling issue of whether the stay should be lifted for cause.

The Purported Purchasers contend that they acquired the property at 75 Baxter Street through the *in rem* tax foreclosure, that they thereby became the rightful own-

ers of the premises, and that Rebecca Burg lacks any possessory right to that property. If they were correct in these assumptions, then the Purported Purchasers might be entitled to stay relief for the purpose of evicting the debtor. The more fundamental issue is whether the underlying tax foreclosure has accomplished what both the City of Buffalo and the Purported Purchasers intended, namely the transfer of title into the name of the Purported Purchasers. What the parties have overlooked in their arguments is that the automatic bankruptcy stay applies not just to the debtor's eviction, but renders invalid the underlying tax foreclosure.

■ Pursuant to 11 U.S.C § 362(a), the filing of a bankruptcy petition operates to stay eight categories of conduct. Applicable to the tax foreclosure sale in the present instance are the third and first of these categories. As noted above, section 362(a)(3) stays "any act to obtain possession of property of the estate." With exceptions that are not here relevant, section 541(a)(1) of the Bankruptcy Code then defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." With respect to the real property at 75 Baxter Street, the debtor possesses legal and equitable interests that derive both from her status as executrix and from her rights as an heir of her mother's estate.

In October of 1985, the Surrogate issued testamentary letters to Rebecca Heckler. Although the letters were issued to the debtor under her maiden name, Rebecca Burg is still the same individual who was serving as executrix at the time of the bankruptcy filing. As the executrix, the debtor holds a legal interest in any property that was previously titled to the dece-

dent, Hilda C. Heckler. Thus, property of the bankruptcy estate must include the debtor's interest as executrix in all of the decedent's assets. For this reason alone, the present bankruptcy operated to stay any act to obtain possession of those assets, including the property at 75 Baxter Street.

■ By the terms of her will, Hilda C. Heckler left to the debtor the remainder of her estate. Included in this inheritance of Rebecca Burg is the Baxter Street property. Under New York law, "[u]pon the death of a person his or her property vests, eo instanti, in his or her heirs or distributees." N.Y. JUR. 2D *Decedents' Estates* § 53 (2002). For real property, New York courts have long recognized this result as a principle of common law. Thus, in *Kingsland v. Murray,* 133 N.Y. 170, 174, 30 N.E. 845 (1892), the Court of Appeals concluded that "title to real estate upon the death of the owner vests immediately in his heirs and devisees." *Accord In re Roberts,* 214 N.Y. 369, 377, 108 N.E. 562, 565 (1915); *In re Baker's Estate,* 164 Misc. 92, 93, 298 N.Y.S. 261, 264 (Sur.Ct. 1937); *In re Fry's Estate,* 28 Misc.2d 949, 950, 218 N.Y.S.2d 755, 757 (Sur.Ct.1961). The law simply will not allow a void of ownership.

All valuable property must belong to someone and devolution of the assets of a decedent to those entitled thereto takes place immediately on death without any intervening hiatus of ownership, even though the ascertainment of the identity of such owner may at times be fraught with difficulty or even be presently impossible of absolute determination.

4 WARREN'S WEED NEW YORK REAL PROPERTY *Descent* § 2.01 (4th ed.2003). Since the death of Hilda C. Heckler in 1985, there-

fore, Rebecca Burg has owned the property at 75 Baxter Street.

As both executor and heir of her deceased mother, Rebecca Burg acquired a bundle of legal and equitable interests in the property at 75 Baxter Street. Whether or not the City's records identify Mrs. Burg as the owner, her bundle of interests became property of her bankruptcy estate when she filed a petition for relief under chapter 13. As an act to obtain possession of that property, the tax foreclosure was stayed by operation of 11 U.S.C. § 362(a)(3).

■ Establishing an independent basis to stay the tax foreclosure is section 362(a)(1) of the Bankruptcy Code. This subdivision provides that a bankruptcy petition stays "the commencement or continuation . . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case." Here, the key issue is whether an *in rem* foreclosure is a "proceeding against the debtor."

In New York, a municipality forecloses a real property tax lien through a proceeding *in rem*. As traditionally formulated, an *in rem* foreclosure is a proceeding against property and not against an individual. Under the current statute, the process begins with the preparation and filing of a list of delinquent taxes. N.Y. REAL PROP. TAX LAW § 1122 (McKinney 2000). Except for properties that are redeemed, the enforcing officer will then execute a petition of foreclosure. § 1123. After filing that petition with the County Clerk, the enforcing officer will effect notice as required under §§ 1124 and 1125. If an answer is filed, the court will "summarily hear and determine the issues raised by the petition and answer." § 1130. Either after default or upon determinations favorable to the municipality at trial, a judgment of foreclosure may be entered. § 1136. Pursuant to that judgment, the enforcing officer may then sell the foreclosed property.

Historically, publication has provided the primary means of notice to parties having an interest in property that is the subject of a tax foreclosure. *See Botens v. Aronauer*, 32 N.Y.2d 243, 344 N.Y.S.2d 892, 298 N.E.2d 73 (1973). Today, publication remains an essential aspect of notice in the *in rem* process. § 1124. In 1993, however, the state significantly enhanced the requirements for personal notice, by adding section 1125 to the statute. Of particular relevance is the following text of subdivision (1) of that section:

> The enforcing officer shall on or before the date of the first publication of the notice above set forth cause a notice to be mailed, by ordinary first class mail, to (a) each owner and any other person whose right, title, or interest was a matter of public record as of the date the list of delinquent taxes was filed, which right, title or interest will be affected by the termination of the redemption period, and whose name and address are reasonably ascertainable from the public record, including the records in the offices of the surrogate of the county . . . .

In the present instance, an examination of the Surrogate records would have revealed that Hilda C. Heckler was deceased and that letters testamentary had been issued to Rebecca Heckler of 75 Baxter Street. From the limited record in this proceeding, it appears that the City of Buffalo may not have sent the requisite notice to Rebecca Heckler. The issue before this court, however, is not whether such notice

was ever sent, but whether the requirement for such notice will suffice to implicate the automatic stay provisions of 11 U.S.C. § 362(a)(1).

■ Because tax foreclosures in New York are inherently proceedings *in rem*, the property owner is not a defendant. Status as a defendant, however, is not a factor determining the application of section 362(a)(1). Rather, its stay extends not just to actions or suits against the debtor as a defendant, but to any "action or proceeding against the debtor." Pursuant to section 1125 of the Real Property Tax Law, the State of New York requires notice to Rebecca Heckler, by reason of the interests that appear from the public records of the Surrogate. She then has an opportunity to answer. Essentially, the Real Property Tax Law recognizes tax foreclosure as a proceeding against the debtor. As such, it is subject to the stay of section 362(a)(1).

■ This court agrees with the holding in *In re Fiedler*, 34 B.R. 602, 603 (Bankr.D.Colo.1983), that a proceeding against the debtor "in whatever 'capacity' is a proceeding against the Debtor" for purposes of section 362(a)(1). Thus, in *Fiedler*, Judge Brumbaugh ruled that the stay applied to litigation against the debtor as personal representative of a decedent's estate. Similarly, section 362(a)(1) has stayed litigation against a debtor in his capacity as an *inter vivos* trustee. *In re Colin*, 35 B.R. 904 (Bankr.S.D.N.Y.1983). *Accord* 3 COLLIER ON BANKRUPTCY ¶ 362.03[3] (Alan N. Resnick et al. eds. 15th ed. rev.2002). Further, the legislative history of section 362(a) supports the application of subdivision (1) to proceedings that involve a debtor in his capacity as an executor. In discussing grounds for stay relief under section 362(d), the House Report on the Bankruptcy Reform Act of 1977 recognized implicitly the application of the automatic stay to proceedings against an executrix:

> A probate proceeding in which the debtor is the executor or administrator of another's estate usually will not be related to the bankruptcy case, and should not be stayed. Generally, proceedings in which the debtor is a fiduciary, or involving postpetition activities of the debtor, need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors. The facts of each request will determine whether relief is appropriate under the circumstances.

H. Rept. No. 95–595 to accompany H.R. 8200, at 343 (1977), U.S.Code Cong. & Admin.News 1977, at 5963, 6300 *reprinted in* BANKRUPTCY CODE, RULES & OFFICIAL FORMS 119 (Thompson West 2003). By recognizing that stay relief is necessary for matters that involve a debtor in his capacity as an executor, the house report acknowledges the underlying application of the automatic stay to such proceedings. So too, in the present instance, the automatic stay extends to any proceeding against Rebecca Burg in her capacity as executrix for the estate of her deceased mother.

The Purported Purchasers contend that the automatic stay should not apply, because an examination of title would not have disclosed the interest of the debtor. The premise for this argument, however, is simply untrue. Included within the chain of title are the records of the Surrogate. These records confirm the death of the most recent grantee of the property and that testamentary letters for that grantee have been issued to Rebecca Heckler.

That the executrix may now be known by a new surname may pose a challenge to title examiners, but it is a matter of no consequence to the application of the automatic stay. Both in her individual capacity and as the continuing executrix, Rebecca Burg receives the full benefit of the automatic stay that derives from the filing of her bankruptcy petition.

■ Special challenges may arise from the application of the automatic stay to proceedings that involve property for which the debtor's interest is not readily ascertainable from the public record. Such problems are particularly likely in the context of inheritances. A debtor may inherit property from a decedent who resided outside the district, or under a will that is not yet probated or that designates heirs not by name, but by class. As in the present instance, a will may also identify a distributee by reference to a prior surname of a debtor. Even in these circumstances, however, section 362 imposes a stay that is automatic and without any prerequisite of actual knowledge of either the bankruptcy or the relationship of the debtor to the action that is stayed. Of course, the lack of such knowledge is a consideration in the determination of any contempt sanctions. In any event, these concerns for the chain of title really have no application in the present instance. The invalidity of the tax foreclosure results from a stay violation by the City of Buffalo, not by the Purported Purchasers. As a scheduled creditor, the City received notice of Burg's bankruptcy. While the public records of the County Clerk and Surrogate did not indicate ownership by anyone with her current last name, Rebecca Burg fully asserted that interest on the schedules that she filed with her petition. Incorporating this claim of ownership, the bankruptcy petition was readily accessible to the City for review. Moreover, in the present instance, the debtor does not need to rely upon any form of constructive notice. Prior to execution of the referee's deed, the debtor's attorney specifically advised the City about Burg's interest in the property and about the filing of her bankruptcy petition. The City obviously received that notice, for it initially rescinded the sale before reversing its position to allow the execution of a deed to the Purported Purchasers. Clearly, this attempted conveyance was a knowing act in contradiction of the automatic stay.

■ As a violation of the automatic stay provisions of section 362(a)(1) and (3), the purported tax foreclosure of 75 Baxter Street was void and of no effect. *In re 48th Street Steakhouse,* 835 F.2d 427, 431 (2nd Cir.1987) As a consequence, the Purported Purchasers lack good title to the premises and have no right to obtain stay relief for purposes of evicting the debtor.

The only application for stay relief that is now before this court is a request by the Purported Purchasers to permit an eviction of the debtor. Thus, the present decision does not speak to the outcome of any future request by the City of Buffalo to allow a prospective foreclosure. Municipalities are not without recourse to enforce tax liens against property in which a debtor may have an interest. Here, the City made no application for stay relief. Despite the debtor's failure to honor her commitment to pay current real estate taxes during the pendency of her prior bankruptcy, the City chose not to challenge the debtor's present bankruptcy plan on grounds of good faith. With respect to the rights of both debtor and creditor, the court does not today consider the binding effect of the chapter 13 plan with respect

to property in which the debtor is not in title. In that regard, the court reserves consideration of the estoppel effect of the City's compliance with the debtor's plan in her previous bankruptcy.

For all of the foregoing reasons, the debtor's request for a preliminary injunction is granted and the cross motion by the Purported Purchasers for stay relief is denied. Pending the issuance of the present decision, this court ordered a general extension of the time by which the Purported Purchasers were obliged to answer the debtor's complaint seeking a declaration that the City of Buffalo is required to accept payments through the chapter 13 plan in satisfaction of the outstanding tax deficiencies. In light of the present decision, the parties might now wish to attempt a settlement of the adversary proceeding. Unless the parties are able to reach such a settlement, however, the defendants shall answer the complaint within twenty days of the entry of this order.

So ordered.