**In the Matter of the**
**ESTATE OF CLIFFORD WRIGHT, Deceased**

Probate No. 15-1961
District Court of the Virgin Islands
Div. of St. Thomas and St. John

August 22, 1962

*See, also, 207 F. Supp. 912*

DUDLEY and HOFFMAN (GEORGE H. T. DUDLEY, ESQ., OF COUNSEL), *for petitioner Orecio A. Wright*

HARRY DREIS, ESQ., *Attorney for Oven P. Wright, Claimant*

GEORGE A. MENA, *District Court Commissioner*

In this estate the petitioner Orecio A. Wright claims he is an illegitimate son of the deceased, Clifford Wright, who died in New York in 1910, leaving real estate Parcel No. 62A Prindsens Gade, King's Quarter, in St. Thomas, having an appraised value of $2,000.00; that at the time of the death of his father Clifford he was survived by petitioner, age 6, and two other illegitimate children, Gerald and Herbert Wright, of tender age; that Herbert died shortly after the death of his father; and that Christenita or Anita Wright, sister of the deceased Clifford Wright, administered the property; that petitioner has lived on the premises as part-owner since 1932, and paid all real property taxes assessed on the property since 1947; that said

property is recorded in the public records in the name of the deceased Clifford Wright, whose estate has never been probated; and that petitioner prays for an adjudication recognizing him and Gerald Wright as the heirs of the deceased Clifford and owners of the property.

Oven P. Wright, illegitimate son of Christenita or Anita Wright; denied that Clifford Wright, deceased, recognized Orecio and Gerald Wright as his sons; denied that petitioner Orecio lived on the premises as part-owner since 1932, but rather with the permission of Christenita or Anita Wright; and further denied that Orecio paid all real property taxes since 1947; and, as and for a cross claim averred that Clifford died in St. Thomas in 1910, which was under the control and ownership of Denmark and subject to its laws; that at the time of Clifford's death in 1910, he was survived by his sister Christenita Wright, known as Anita Wright; that in 1910, upon the death of Clifford, Christenita or Anita Wright became the owner and was in possession of the property and collected rents therefrom until her death on December 17, 1958; that upon her death the property was vested in her illegitimate son Oven P. Wright as her sole heir (Certificate of Death for Anita Wright and Certificate of Birth for Oven Pedro Wright were filed in Probate No. 23-1960); further, Oven P. Wright, a resident of New York, through his attorney, prays that the petition of Orecio A. Wright be dismissed and that the property in question be adjudicated to him as the sole legal heir of Christenita Wright, also known as Anita Wright. Orecio was born in 1904 and Gerald in 1905.

On May 11, 1962, a hearing was had before the District Court Commissioner and testimony was taken and exhibits submitted. Attorney Harry Dreis, on behalf of Oven P. Wright, filed a Memorandum of Law and introduced six exhibits. Attorney George H. T. Dudley, on behalf of Orecio A. Wright, introduced three exhibits. All exhibits were admitted in evidence.

Claimant Oven P. Wright contends:

1. That Orecio and Gerald Wright as illegitimate children were barred under the laws of Denmark in force at the time of Clifford's death from sharing or participating in the estate of Clifford Wright, citing the laws of Denmark as applied to the Danish West Indies in 1910, the Treaty between Denmark and the United States in 1917, which guaranteed vested property rights, and the Colonial Law of April 6, 1906 in force in 1910, the Organic Acts of 1917, 1936 and 1954, [preceding Title 1, V.I.C.] and 1 Virgin Islands Code, Section 6, relating to vested rights acquired prior to the enactment of the Virgin Islands Code; he also claimed that Orecio Wright by his silence and delay is estopped and that Anita Wright should be adjudged the owner of the property by adverse possession.

In reply thereto, Attorney George H. T. Dudley, on behalf of Orecio and Gerald Wright, filed a Memorandum of Law contending that Orecio and Gerald Wright were recognized as illegitimate children by Clifford, as per Baptismal Certificates produced and the testimony of the witnesses Edith Williams and Amadeo Francis; that 15 Virgin Islands Code § 84(13), (1946) enables illegitimate children to inherit from their father; that Christenita or Anita Wright occupied the property as trustee for the benefit of the children of Clifford; that she had a life estate and should transfer the legal title in the property to the children Orecio and Gerald; that Orecio occupied the premises in derogation of the claim of Christenita or Anita Wright for over 15 years; and that Orecio and Gerald are entitled to inherit from the estate of their father since 1946, as per 15 V.I.C. § 84(13), and decision of this Court in the Estate of Abraham Petersen, Probate No. 19-1947 (St. Thomas).

It appears that the following are the relevant questions presented for the Commissioner in a determination of the rights of the petitioner and claimant:

330

1. Were Orecio and Gerald Wright recognized by Clifford Wright as his illegitimate children at the time of his death in 1910?

2. Was a trust created in favor of the minor children Orecio and Gerald Wright upon Clifford leaving for New York; and if so, to what exent?

3. Did the fee in the property vest in Christenita or Anita Wright at the time of Clifford's death in 1910?

4. Is Oven P. Wright an illegitimate child of Christenita or Anita Wright, and if so, is he entitled to inherit his mother's interest?

5. Is the petitioner or claimant legally entitled to the property in question by adverse possession?

Answering these questions *in seriatim*:

■ *Question 1.* From the evidence and baptismal certificates produced it is clear to the Commissioner that Orecio and Gerald Wright were recognized by Clifford Wright as his illegitimate children. He provided for their care and sustenance before leaving for New York and the verbal testimony corroborated the baptismal certificates introduced in evidence.

■■ *Question 2.* The evidence shows that when leaving for New York, Clifford left Christenita or Anita, his sister, in charge of the property and the minor children, including Orecio and Gerald, and that the rentals from the property contributed, as he intended, toward the support of the minor children. Christenita or Anita Wright cared for and supported Orecio and Gerald Wright, who were of tender age. Upon attaining their majority or emancipation this fiduciary relationship terminated. The evidence further shows that Clifford did nothing more than leave the property in the charge of his sister Anita, so that the rentals therefrom could assist her in supporting the minor children. There is not a scintilla of evidence to support the allegation or inference that Clifford gave, or intended to give,

a life interest in the property to his sister Anita, and after her death that the fee or remainder should vest in his illegitimate children, and there is no such averment in the pleadings of the petitioner. If Clifford did what counsel for petitioner alleges or infers he did then his action would create an express trust, which would come within the Statute of Frauds. 28 Virgin Islands Code, 241. But, as previously said, he simply left the rentals to assist in the support of the minor children.

■ *Question 3.* I am persuaded that the fee in the property vested in Christenita or Anita Wright upon the death of Clifford in 1910.

"One has a vested right in property to which he succeeds under the law of descent and distribution immediately on the death of the ancestor. It follows that an estate must be distributed among heirs and distributees according to the law as it exists at the time of the death of the ancestor." 16 Am. Jur. Section 20. (Descent and Distribution)

"Real property vests in the heirs immediately on the death of the ancestor . . ." 16 Am. Jur. Section 22. (Descent and Distribution)

"Property descending or passing to heirs and distributees includes and is limited to property of the ancestor at the time of his death. Their status is the same as his was, and they stand in his place with no greater rights than he had with respect to such property; they take precisely what he leaves and no more." 16 Am. Jur. Section 32. (Descent and Distribution)

■ As Clifford died intestate, the fee or title to the property, upon the death of Clifford in 1910, is governed by the Danish Law in force in these islands in 1910.

The pertinent provisions of the Danish Law of May 21, 1845 in force in the Danish West Indies are as follows:

"Page 17 (Descent)

"1. A deceased person's children and other offspring will continue to be his closest heirs."

"5. If both parents have passed away . . . the legatee's brothers or sisters will become the heirs."

"9. (PARAGRAPH 9 IS STILL IN EFFECT FOR CHIL-DREN BORN BEFORE JANUARY 1, 1938. CHILDREN BORN AFTER THAT TIME: LAW 134, MAY 7, 1937). The previous paragraphs merely decide how relatives inherit . . . the King therefore has decided that *a child born out of wedlock* only inherits from its father or its father's relative *if the parents intended to get married before its birth and the marriage was prevented by the death of the father or other hindrance which cannot be blamed on him* such as illness or imprisonment. *The parents must have announced their intentions either by banns or by taking out a marriage license* . . . This rule, however, is only valid in ordinary descendance inheritance cases. It cannot be used in cases of family property where a special will has been made. (italics added)." Certification of Library of Congress in Danish and English, the English translation being verified by Liz King, who qualified at the hearing as an expert translator from Danish to English. *Claimant Oven P. Wright Exhibit No. 3.*

"According to Section 7 of the Colonial Law for the Danish West Indies (Koloniallov for de danskvestindiske øer) of April 6, 1906, Danish common and statute law (Dansk Lov and Ret), as more accurately defined by the Laws and Ordinances, shall from now on be applicable in the colonies.

"This Section is in accordance with the provisions of the former Colonial Laws of March 31, 1755 (Sec. 3) and November 27, 1863 (Sec. 67).

"The general Danish law applicable in the West Indies which, among other provisions, contains those relating to inheritance, was *Kong Christian den Femtis Danske Lov* of May 17, 1683, which has been translated into English under the title *The Danish Laws: or, the Code of Christian the Fifth. Faithfully Translated for the Use of the English* Inhabitants of the Danish Settlements in America.

"By the Royal Decree of December 31, 1848, directed to the Government of the West Indies (Reskript til den vestindiske Regering), the Decree pertaining to Some Amendments to the Law of Inheritance (*Forordning indeholdende nogle Forandringer in Lovgivningen om Arv*) of May 21, 1845 was enacted in the Danish West Indies with some modifications in Sections 18, 19, 24, 31, 32, and 33.

"This law was in force in 1919 in the Danish West Indies with

333

amendments of December 12, 1857 (Sec. 23) and April 7, 1899 (Sec. 7).

"The following are the provisions of the law in force in 1910 in the Danish West Indies concerning the inheritance rights of illegitimate children:

"1. Article 9 of the Law of 1845 provides:

"As the preceding Articles provide how relatives shall inherit, so shall the preceding provisions with regard to conditions of relationship which institute the right of inheritance remain in force. However, as Provision 5–2–33 of the Law is no longer literally applicable, it shall be resolved by the King that a child born out of wedlock shall be entitled to inherit from his father and his father's relatives if the parents, before the child's birth, legally declared their intention of entering into marriage by asking that the banns be posted (*bestille Tillsyning til Aegteskab*), but the marriage was prevented by the death of the father or by some other obstacle such as illness or captivity. This applies only to the usual inheritance rights of relatives and shall not apply to family property with regard to which a special order of succession is in effect, nor to a child who may claim special privileges to which a child born in wedlock might be entitled in accordance with the position of its father.

"2. The wording of Provision 5–2–33 of the Code of King Christian V, modified by Article 9 of the Law of 1845, was as follows:

"Those children are considered legitimate who were born of legally betrothed parents whose wedding day had been fixed but where the betrothed father died before the day of the wedding if it can be established that the child was conceived after the parents were betrothed by a clergyman.

"3. The other Article of Book V, Chapter II, *Om Arv of Skifte* (Inheritance and its Distribution), of the Code of Christian V, provide the following in regard to the inheritance rights of illegitimate children:

"*Section 32.* (5–2–32) Legitimate children are those who were born of parents who were married to each other, even if the parents were married after the birth of the child.

"*Section 70.* (5–2–70) A bastard (slegfredbarn) shall not inherit from its father. But if the father takes the child before a court and solemnly declares that it is his child, and makes a deed regarding what it shall inherit from him, the child shall

334

keep this portion of the estate provided the portion does not exceed one half the share of a legitimate child." Inheritance Rights of Illegitimate Children Under Danish Law Applicable to the Virgin Islands by Johannes Klesment, European Law Division, Library of Congress, June 25, 1962.

There is nothing in the pleadings or evidence to show that the parents of Orecia and Gerald Wright, before their birth, "legally declared their intention of entering into marriage by asking that the banns be posted (bestille Tillsyning til Aegteskab), but the marriage was prevented by the death of the father or by some other obstacle such as illness or captivity . . ." or that Clifford took the minor children before a court and solemnly declared them to be his children and made a deed regarding what they shall inherit from him.

"Illegitimate children inherit from their mother as though legitimate and, if born *after* Jan. 1, 1938, inherit from their father also." Danish Law of Descent, Martindale Hubbard, *Claimant Oven P. Wright Exhibit No. 2.*

"This is to certify *that,* according to Danish legislation dating back to 1683 which was not changed until January 1, 1938, a child born out of wedlock could not inherit from the father's estate unless the child had been legitimated by the father or it was made a legatee in the father's last will and testament, *that* a child born out of wedlock inherits from the mother's estate as a child born in wedlock, *that* on January 1, 1938 an act came into force according to which a child born out of wedlock inherits as a child born in wedlock in his father's estate provided the paternity has been established, and *that* this act, dated May 7, 1937, only relates to children born out of wedlock on or after January 1, 1938. For children born out of wedlock prior to said date, the previous legislation has to be employed.

It is further certified that the signer is the Consul of Denmark, duly appointed and accredited to act as such for the United States of America, in the City and State of New York.

"That the law relating to inheritance, as hereinabove set forth is contained in the Law Register of Denmark which is published by governmental authority, is received as the official publication of the Statutes of Denmark and is admitted as evidence of the

335

existing laws in the judicial tribunals of Denmark." Certification by and under the Seal of the Royal Danish Consulate General at New York, *Claimant Oven P. Wright Exhibit No. 1.*

"Frederik the 7th, King of Denmark, to the West Indian Government. We have considered a report from our Minister of Justice about which the 1845 laws ought to be extended from the Kingdom of Denmark to our West Indian islands. We have decided that the law of May 21st, 1845, containing some changes in the legislation on inheritances, will be extended to the previously mentioned colonies." Proclamation of December 31st, 1848, to the West Indian Government about the Law of May 21st, 1845. Certified by the Library of Congress and Translation verified by Liz King, Danish-English Translator. *Claimant Oven P. Wright Exhibit No. 4.*

"*Section 67.* The Common and Statute Law of Denmark shall as hitherto be applicable in the colonies, as more accurately defined by the Laws and Ordinances." Certified by the Library of Congress and Translated by Liz King, Danish-English Translator, *Claimant Oven P. Wright Exhibit No. 5.*

". . . But it is understood that this cession does not in any respect impair private rights which by law belong to the peaceful possession of property of all kinds by private individuals of whatsoever nationality. . . having legal capacity to acquire and possess property in the Islands ceded." Article 2, Treaty between United States and Denmark, January 25, 1917, Section 629, 39 Stat. 1706. (Virgin Islands Code Historical Documents, Page XLV).

". . . Danish citizens residing in said island may remain therein or may remove therefrom at will, retaining in either event all their property rights, including the right to sell or dispose of such property or its proceeds. . . If the present laws are altered, the said inhabitants shall not thereby be placed in a less favorable position in respect to the above mentioned rights and liberties than they now enjoy." Article 6, Treaty above referred to. (Virgin Islands Code, Historical Documents, Page XLIX).

"Rights to property in St. Thomas which *vested* under the Danish law in force in that island prior to July 1, 1921. . . were not affected by the change of sovereignty or by the substitution on that date of the rules of common law." (citing numerous cases). *Accordingly the rules of the Danish law in force when*

336

*such property rights to property vested define those rights today.*" (citing numerous cases) (italics added). Callwood v. Kean, 2 Virgin Islands Reports 526, Note at 542, 1951.

". . . Local laws, in force and effect in said islands on the seventeenth day of January, nineteen hundred and seventeen, shall remain in force and effect in said islands. . . " Virgin Islands Code, Historical Documents, Sec. 2, Page LXIII. (Organic Act 1917, 39 Stat. 1132).

". . . no law shall be enacted which would impair rights existing or arising by virtue of any treaty entered into by the United States, . . " Virgin Islands Code, Historical Documents, Page LXXIII, Sec. 19. (Organic Act 1936, 49 Stat. 1807).

". . . no law shall be enacted which would impair rights existing or arising by virtue of any treaty or international agreement entered into by the United States, . . " Virgin Islands Code, Historical Documents, Page CXI, Sec. 8(a) (Rev. Organic Act 1954, 68 Stat. 497).

"Unless expressly continued by provisions of this Code and except as otherwise provided herein, no general local or colonial law, ordinance, decree. . . issued. . . enacted by the King or State of Denmark, has any force or effect in the Virgin Islands. HOWEVER THIS SECTION DOES NOT AFFECT ANY RIGHT ACQUIRED UNDER ANY SUCH LAW, ORDINANCE, DECREE, ORDER, PLACARD OR REGULATION PRIOR TO THE EFFECTIVE DATE OF THIS CODE AND EXISTING ON THAT DATE." (Italics supplied). 1 V.I.Code, Page 5, Sec. 6 (1957)

██ *Question No. 4.* Both questions are answered in the affirmative. The Birth Certificate of Oven P. Wright, born in October, 1911, in Puerto Rico, shows that Christenita Wright was his mother. It does not show the name of his father. The oral testimony confirmed the birth certificate. Oven P. Wright alleges that he is the sole surviving heir of Christenita or Anita Wright, his mother, which has not been rebutted.

Since Christenita or Anita Wright died intestate in 1958, the descent of her real property interest or rights is governed by the law of descent in force in 1958.

"The real property of a deceased person, male or female, not devised, shall descend. . . to the surviving spouse, children or next of kin or other persons, in the manner following: (1) One-third to the surviving spouse, and the residue in equal portions to the children. . . " 15 V.I.Code Sec. 84(1), (Descent and Distribution of Estate of Decedent).

"(5) If there be no surviving spouse the whole thereof shall descend and be distributed equally to and among the children. . . " 15 V.I.Code Sec. 84(5) (Descent and Distribution of Estate of Decedent).

"An illegitimate child shall be considered to have the same status for the purpose of the descent and distribution of the property of his or her ancestors, as if he or she were born in lawful wedlock. . . " 15 V.I.Code Sec. 84(13) (Descent and Distribution of Estate of Decedent).

The Virgin Islands Code above quoted came into force and effect on September 1, 1957, (1 V. I. Code, Section 3).

Since it is alleged and not denied and nothing to the contrary has been shown, namely, that Oven P. Wright was and is the sole surviving heir of Christenita or Anita Wright, Oven P. Wright is entitled to inherit her real property interest or rights as shown above.

*Question No. 5.* As questions No. 3 and 4 have been answered in the affirmative, it is not necessary to pass upon question No. 5.

WHEREFORE, the Commissioner finds that the Claimant Oven P. Wright is the sole and lawful surviving heir of Christenita or Anita Wright, sister of Clifford Wright, deceased, and that he is legally entitled to inherit the real estate in question, Parcel No. 62A Prindsens Gade, King's Quarter, St. Thomas.

Judgment or adjudication in accordance with this opinion will be entered upon presentation.