# IN THE MATTER OF THE ESTATE OF: HARRIS A. TODMAN, Deceased

Probate No. 90/1987

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

December 17, 2006

166

168

JEFFREY B.C. MOORHEAD, ESQ., St. Croix, United States Virgin Islands, *Attorney for the Estate of Harris A. Todman.*

SHARON SCHOENLEBEN, ESQ., St. John, United States Virgin Islands, *Attorney for the Heirs of the Estate of Harris A. Todman.*

SWAN, *Judge*

## MEMORANDUM OPINION

(December 17th, 2006)

Before the Court is the Estate of Harris A. Todman's (the "Estate") *Motion to Re-Affirm the Court's Order dated August 17th, 1988,* which ordered Tyrone Davis, the Administrator of Harris Todman's Estate, to convey title to Parcel No. 14 Estate Emmaus, St. John, United States Virgin Islands to Christian R. Moorhead and John S. Moorhead. Also before the Court is the Estate's June 17th, 1994 *Motion to Reject Claim and Motion to Order Administrator to Convey Title of Parcels 14A and 14 Remainder Estate Emmaus to John S. Moorhead and Christian Moorhead.* For the reasons enumerated below, the Estate's motion to reaffirm the Court's August 17th, 1988 Order is GRANTED, and the Estate's motion for order directing the Administrator to convey title to Parcels 14A and 14 Remainder is MOOT.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 22, 1971, Harris A. Todman ("Todman" or "Decedent"), received Twenty Thousand Dollars ($20,000.00) from James Moorhead ("Moorhead"), and simultaneously executed a Contract of Sale (the "Contract") to convey Parcels Nos. 13 and 14 Estate Emmaus, Coral Bay

Quarter, St. John, United States Virgin Islands to Mr. Moorhead.[1] The Contract specifically stated that "Seller [was] the owner of Parcels 13 and 14 Estate Emmaus, Coral Bay Quarter, St. John...his title to Parcel 13 resting on conveyance to him from the heirs of Nellie Biel, and his title to Parcel 14, being held as devisee or distributee of the Estate of Caroline George, [his mother], deceased, which estate is in administration and has not yet closed ..."

Essentially, at the time of execution of the Contract, Mr. Todman was the record owner of Parcel No. 13, but his interest or anticipated ownership of Parcel No. 14 arose from his status as sole heir of his mother, Caroline George, who was already deceased. The Contract explicitly provided that Mr. Todman would immediately convey Parcel No. 13 Estate Emmaus to Moorhead, but that he would convey title to Parcel No. 14 Estate Emmaus "within 30 days after the adjudication in the pending probate proceedings in the Estate of Caroline George."[2] On May 22, 1971, Mr. Todman conveyed title to Parcel No. 13 to Moorhead by Warranty Deed, which was recorded in the Office of Recorder of Deeds for St. Thomas and St. John on July 20, 1971, in Book 12-Y, Page 12, No. 2279 and entered in the Coral Bay Register, Page 248. The Contract was recorded upon the title records of both Parcel Nos. 13 and 14 Estate Emmaus, in the Office of Recorder of Deeds, Division of St. Thomas and St. John on April 2, 1985, in Book 26-T, Page 145, No. 1253 and entered in the Coral Bay Register, page 243.

Unfortunately, on May 14, 1985, Mr. Todman died. Three days later, on May 17, 1985, the Territorial Court in which the Caroline George Estate was pending issued the final adjudication, adjudicating Caroline George's Estate, and simultaneously awarded Harris Todman title and ownership to Parcel No. 14, Estate Emmaus, Coral Bay Quarter, St. John, U.S. Virgin Islands.

On October 26, 1997, John Moorhead, the brother of James Moorhead and a creditor of the Decedent, filed a petition for the administration of the Estate of Harris Todman. 15 V.I.C. 236. In the Petition, John Moorhead asserts that Harris Todman, the Decedent, died intestate and

---

[1] Contract of Sale dated May 22, 1971, at paragraph 3 says in pertinent part, "... Purchaser on behalf of himself and Christian R. Moorhead, has paid or caused to be paid to Seller the full consideration of Twenty Thousand Dollars ($20,000.00), for the conveyance of both of said parcels of land ..."

[2] Contract of Sale, dated May 22, 1971, page 1.

that he is a creditor of the Decedent. John Moorhead further asserts that his claim as creditor emanated from the fact that his brother, James Moorhead, after purchasing Parcel No. 14 Estate Emmaus from Decedent Harris Todman, assigned his interest in the property to his brother, Christian Moorhead, who subsequently assigned a one-half interest in the property to another brother, John Moorhead. Accordingly, at that juncture, Parcel No. 14 is purportedly owned jointly by Christian Moorhead and John Moorhead, each holding a one-half, undivided interest in Parcel No. 14.

On February 25, 1988, the Court appointed Tyrone Davis the administrator of the Decedent's Estate. Subsequently, Mr. Davis filed a motion seeking permission to convey title to Parcel No. 14 to Christian Moorhead and John Moorhead. On August 17, 1988, Territorial Court Judge Alphonso Christian granted Davis's motion for permission to convey title to parcel 14 Estate Emmaus to both John S. Moorehead and Christian Moorhead. No appeal was taken from Judge Christian's Order.

Significantly, five days later on August 23, 1988, Samuel Petersen filed a Petition for Probate of the Last Will and Testament of Harris Todman. Harris Todman allegedly executed that will on December 16, 1977, and it apparently named Samuel Petersen, Jr. as executor of Todman's Estate. In his petition for probate, Mr. Petersen requested that Letters of Administration previously granted to Tyrone Davis be revoked, and that new Letters Testamentary be issued to Petersen. On October 3, 1988, Judge Alphonso Christian ordered Mr. Petersen to file certain required documents for the probate proceedings; however, Mr. Peterson failed to file the necessary documents as ordered by Judge Christian. Therefore, on February 8, 1990, almost fifteen (15) months later, Judge Christian dismissed Mr. Petersen's petition for probate. On May 13, 1993, Tyrone Davis, the Administrator, filed a motion requesting that the Court reopen the matter. Davis also requested permission to convey Parcel Nos. 14 and 14A Remainder Estate Emmaus to John Moorhead and Christian Moorhead.[3]

Approximately four (4) months later on September 9, 1993, Gwendolyn Todman, Decedent Harris Todman's daughter-in-law, filed another petition seeking to probate the Estate of Harris Todman. In her

_____
[3] Subsequent to execution of the contract, Parcel No. 14 was subdivided into two parcels by Public Works.

petition, Mrs. Todman stated that she was the Decedent's daughter-in-law and primary beneficiary, and she nominates Anesta Sewer to be appointed Administratix of the Estate. On April 5, 1994, Anesta Sewer and her daughter, Lucia Williams, filed a notice of claim upon the Estate of Harris Todman, claiming among other things, that Todman purported to devise Parcel No. 14 to others, including Anesta Sewer, and that Anesta Sewer and Lucia Williams had paid real property taxes on Parcel No. 14 since Decedent's death in May, 1985.

By order dated October 4, 1996, Territorial Court Judge Soraya Diase granted in part, and denied in part, Administrator Tyrone Davis' motion to reopen the matter. The order also prohibited Mr. Davis from conveying any property of the Estate without the Court's prior approval. Alternatively, on October 10, 1996, Mr. Davis filed a Motion to Reaffirm the Court's Order of August 17, 1988, which had originally granted Mr. Davis permission to convey title of Parcel No. 14 to Christian Moorhead and John Moorhead. On February 5, 1997, Judge Diase reserved ruling on the Administrator's motion to reaffirm the Court's August 17, 1988 Order, pending admission to probate of Harris Todman's Last Will and Testament.

After several years, the case came on for a status hearing before this Court on July 22, 2002. At the July 22, 2002 hearing, the Heirs argued that the Estate's Motion for an Order Reaffirming the Court's Order of August 17, 1988, should be denied. The Heirs assert that the Contract to sell Parcel No. 14 to Mr. Moorhead became void upon Decedent's death, because Decedent did not acquire title to Parcel No. 14 before he died. The Heirs further assert that Title 15 of the Virgin Islands Code, concerning descent and distribution of a decedent's estate, applies to this case, and requires that real property of a deceased person, not devised, be distributed one-third to the surviving spouse, and the residue in equal portions to the children and such persons as legally represent the children who died before the deceased. 15 V.I.C. § 84. Therefore, the heirs concluded that when Mr. Todman died, he ceased to be a person who can inherit from the estate of a deceased or from his mother's estate and likewise ceased to be a person to whom real property can be distributed. In contrast, the Estate of Harris Todman argues that because Todman was the only heir of his mother's estate, he validly transferred equitable title and possession of Parcel No. 14 to James Moorhead in accordance with the terms of the Contract of Sale, and similarly transferred his

172

expectancy interest in the property to Moorhead, thereby giving Moorhead the right to ownership of Parcel No. 14 Estate Emmaus.

## II. DISCUSSION

The issues are as follow:

(1) Whether the contract of sale between Harris Todman and James Moorhead, which purportedly transferred Parcel No. 14 Estate Emmaus, Coral Bay Quarter, St. John, United States Virgin Islands, title to which Todman would inherit as sole heir to his deceased mother's estate that was in probate but not yet adjudicated, was a valid and enforceable contract of sale, making Moorhead the equitable owner of the property, and requiring the Estate to convey legal title to Moorhead's assigns; and

(2) Whether the August 17th, 1988 Order of Judge Alphonso A. Christian, wherein he granted the Estate's motion for permission to convey title to Moorhead, is a final order which is subject to the doctrines of collateral estoppel and res judicata.

## A. VESTING OF ESTATES AND INTESTATE SUCCESSION OF PROPERTY

■ There is a paucity of Virgin Islands case law on the pivotal issue in this case. Moreover, the available law only peripherally addresses the issue. However, the American Law Institute Restatements of Law are instructive, because Virgin Islands statutory law provides:

> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

V.I. CODE ANN. Tit. 1, § 4 (2000). The Restatements of the Law, including the Restatement (Second) of Contracts, have been adopted as a definitive source of rules of decision by the Virgin Islands Legislature. *James v. Zurich-American Insurance Co.*, 203 F.3d 250, 255 (3d Cir. 2000). *See also Action Engineering v. Martin Marietta Aluminum*, 670 F.2d 456, 458 (3d Cir. 1982). As a general rule, the right to succession of a decedent's property is vested at the decedent's death. *Matter of Estate*

*of Wilson*, 610 N.E.2d 851 (Ind. App. 1993); *Rowe v. Cullen*, 177 Md. 357, 9 A.2d 585 (1939); *Scamman v. Scamman*, 56 Ohio L. Abs. 272, 90 N.E.2d 617 (1950); *DeWitt v. Cavender*, 1994 OK Civ. App. 93, 878 P.2d 1077 (Div. 1 1994); *Gentry v. Gentry*, 924 S.W.2d 678 (Tenn. 1996); *Henson v. Jarmon*, 758 S.W.2d 368 (Tex. App. Tyler 1988). *See also Harold ex rel. Harold v. McGann*, 406 F. Supp. 2d 562, 573 (E.D. Pa. 2005) (rights of estate distributees are fixed at instant of death) (Citations omitted). Accordingly, upon the death of a person, his or her property vests, *eo instanti*, in his or her heirs or distributees. *In re Burg*, 295 B.R. 698, 702 (Bankr. W.D.N.Y. 2003). Similarly, "[h]eirship is determined at the decedent's death. The decedent's death [is the point at which] intestate property passes...to the decedent's heirs. [However,] [b]efore a decedent's death, a potential heir has no property interest, but merely an 'expectancy' (an inchoate interest) in the decedent's intestate estate." RESTATEMENT (THIRD) OF PROPERTY: WILLS AND DONATIVE TRANSFERS § 2.1 comment d (1999).

▮ Furthermore, the right to possession of an intestate's property and the right of an heir to receive property by intestate succession accrues immediately upon the death of the ancestor, subject only to the control of the court for purposes of administering the estate, including the payment of claims against the estate. 23 AM. JUR. 2D *Descent and Distribution* § 14 (2002). Additionally, a statutory distributee acquires a vested interest in decedent's net estate on the date of decedent's death, and not on the date of distribution or determination of the estate's proceeds. *United States v. Comparato*, 850 F. Supp. 153, 157 (E.D.N.Y. 1993). Importantly, probate proceedings merely affect beneficiaries' right to enjoy possession of the estate; they have no effect on vesting of the estate. *Matter of Chenoweth*, 3 F.3d 1111, 1113 (7th Cir. 1993). Therefore, passage of title of decedent's property to the heirs does not require settlement of the estate or a probate order declaring heirship. *Mischke v. Mischke*, 253 Neb. 439, 571 N.W.2d 248 (Neb. 1997).

▮ Virgin Islands law recognizes this widely accepted and established rule that real property interests pass to the heirs immediately upon the death of the intestate ancestor and can be asserted by those heirs immediately. Virgin Islands law further provides that heirs-at-law succeed to real property of an intestate by operation of law, without the necessity of a formal administration of the estate. *Government of the Virgin Islands v. Certain Parcels of Land in Estate Nisky*, 713 F.2d 53,

174

57 (3d Cir. 1983) (*citing Rhymer v. Government of the Virgin Islands*, 176 F. Supp. 338, 4 V.I. 63 (D.V.I. 1959)) (holding that decedent's equitable interest in a homestead plot passed at his death to his heir, and could lawfully be asserted by the heir). Even under Danish law, which formerly controlled in the Virgin Islands, "[o]ne [had] a vested right in property to which he succeed[ed] under the law of descent and distribution immediately on the death of the ancestor." *Estate of Wright*, 207 F. Supp. 912, 914, 4 V.I. 327 (D.V.I., 1962). Consequently, in the Virgin Islands, real property vests in the heirs immediately upon the death of the ancestor. *Id.*

██ Adhering to this entrenched precedent, it logically follows that Decedent Todman's interest in Parcel No. 14 vested immediately upon his mother's death on March 31, 1962. Harris Todman was the sole heir and next of kin to his mother's estate. There is no credible evidence to suggest the contrary. Likewise, there is no evidence to indicate, or from which one can plausibly conclude, that Todman's mother died testate, or that she had devised Parcel No. 14 Estate Emmaus by will. Likewise, there is no evidence that prior to her death Caroline George, Todman's mother, had deeded Parcel No. 14 Estate Emmaus to anyone. Significantly, it was previously determined by Judge Alphonso A. Christian that Caroline George died intestate, and that her sole heir and next of kin was Harris Todman.[4] Therefore, Decedent Todman was able to immediately assert his legal right to the property at the time of his mother's death in 1962, and was legally empowered to enter into a valid and enforceable contract for the sale of Parcel No. 14 in 1971. This unavoidable conclusion is buttressed by the fact that on May 17, 1985, the Court in which Caroline George's Estate was pending issued a judgment, adjudicating her estate and simultaneously awarded Decedent Harris Todman title and ownership to Parcel No. 14, Estate Emmaus, St. John, United States Virgin Islands.

## B. EQUITABLE REMEDY OF SPECIFIC PERFORMANCE

"[T]here is nothing strange or unusual about a seller agreeing to sell property that he does not at the time own outright." *Douglas v. Lyles*, 841 A.2d 1, 4 (D.C. 2004). In fact, "[i]t is quite lawful for an anticipatory

---

[4] See Adjudication of Estate entered by Judge Alphonso A. Christian dated May 17, 1985.

owner to contract to sell property before title has passed to him and such a contract is generally enforceable against the anticipatory owner." *Id.* In such a situation, "the normal remedy would be damages, whether or not the seller eventually gets title to the sold goods. However, '[w]hen real property is the subject matter of the agreement, the legal remedy of damages is assumed to be inadequate, and since each parcel of land is unique, specific performance is warranted in such a case.'" *Id.* at n.4 *quoting Coburn v. Heggestad*, 817 A.2d 813, 823 (D.C. 2003) (*quoting 1010 Potomac Assoc. v. Grocery Mfrs. of America, Inc.*, 485 A.2d 199, 212 (D.C. 1984)).

██ ██ At common law, a presumptive heir can assign to a third party his expectancy interest. *Lyles*, 841 A.2d at 4. See also RESTATEMENT (THIRD) OF PROPERTY, WILLS AND OTHER DONATIVE TRANSFERS § 2.6, comment j (1999). Additionally, an expectancy of an inheritance can be transferred by assignment. *In re Cowden*, 337 B.R. 512, 525 (Bkrtcy. W.E. Pa., 2006). A person is an expectant distributee "if the person anticipates receiving property on the death of a person who is currently alive." *Lyles*, 841 A.2d at 4. "A contract to assign an expectancy interest is only enforceable at equity, *i.e.*, by specific performance." *Lyles*, 841 A.2d at 4 *quoting citing* 16 RICHARD R. POWELL, POWELL ON REAL PROPERTY § 90.13, 90-162 (2000).

> Such an assignment is valid if it is based on fair consideration and is made voluntarily under circumstances free of fraud or oppression. A prospective heir can bind all or a portion of the expectancy interest. *The consequences of assignment to a third party are clear-the assignment entitles the assignee to specific performance of the assignment upon the death of the source.*

*Lyles*, 841 A.2d at 4 *citing* POWELL at 90-166.

The District of Columbia Court of Appeals in Lyles expounded on this issue by reviewing the common law doctrine of after-acquired title, stating:

> Further guidance on the general principle that one can validly contract to sell that which he does not yet own comes from the doctrine of after-acquired title, which holds that 'if a grantor purports to transfer ownership of real property to which he lacks legal title at the time of transfer, but subsequently acquires legal

title to the property, the after-acquired title inures, by operation of law, to the benefit of the grantee.

*Lyles*, 81 A.2d at 5 (*quoting M.M. & G., Inc. v. Jackson*, 612 A.2d 186, 190 (D.C. 1992)) (*quoting Miller-Long v. John Hanson Savings & Loan*, 676 F. Supp. 298, 299-300 (D.D.C. 1987)).

 Courts will generally grant specific enforcement of a contract to prevent unjust enrichment. *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 210 (3d Cir. 2004); *University of Colorado Foundation, Inc., v. American Cyanamid Company*, 342 F.3d 1298, 1311 (2003). The equitable remedy of specific performance is not a matter of absolute right but rests within the sound discretion of the court. *Sheet Metal Workers' Int'l. Ass'n Local 19 v. Herre Bros., Inc.*, 201 F.3d 231, 249 (3d Cir. 1999). "In any suit seeking specific performance, a grant of equitable relief is available only as a substitute in 'the absence of an adequate remedy at law.'" *Id. quoting Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478, 82 S. Ct. 894, 8 L. Ed. 2d 44 (1962).

 Generally, the legal remedy is inadequate in only two situations:

(1) where damages would be insufficient because the subject matter of the contract is of such a special nature that it resists translation into quantitative terms—the damage remedy would not be a just and reasonable substitute for or representative of that subject-matter in the hands of the party who is entitled to its benefit; or (2) where damages are impracticable because it is impossible to arrive at a legal measure of damages at all, or at least with any sufficient degree of certainty.

*Sheet Metal Workers' Int'l Ass'n Local 19*, 201 F.3d at 249-50.

"Damages cannot be accurately ascertained 'where the subject matter of an agreement is an asset that is unique or one such that its equivalent cannot be purchased on the open market.'" *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 160 (3d Cir. 1999) (*quoting Tomb v. Lavalle*, 298 Pa. Super. 75, 444 A.2d 666, 668 (1981)). Specific performance has generally been ordered by the Court when the subject of the controversy involves land. 'There is a virtual presumption, because of the uniqueness of land and the consequent inadequacy of monetary damages, that specific performance is the buyer's appropriate remedy for the vendor's breach of the contract to convey.' *In re Nickels Midway Pier, LLC*, 341 B.R. 486, 499 (D.N.J., 2006) (*quoting Friendship Manor, Inc. v.*

177

*Greiman*, 244 N.J. Super 104, 113, 581 A.2d 893 (App. Div. 1990) (stating that specific performance is a discretionary remedy and a party seeking such remedy "must stand in conscientious relation to his adversary").

 Todman purportedly received Twenty Thousand Dollars ($20,000.00) from James Moorhead ("Moorhead"), which prompted the decedent, Harris Todman, to execute a contract of sale to convey Parcels Nos. 13 and 14 Estate Emmaus, Coral Bay Quarter, St. John U.S. Virgin Islands to Mr. Moorhead.[5] Therefore, there is consideration to support the Contract. The Court's record is devoid of any evidence of fraud, misrepresentation, mistake, deception on any other cogent basis to merit voiding the contract. Additionally, it is noteworthy that every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. RESTATEMENT (SECOND) CONTRACTS § 205 (1981). Accordingly, enforcement of the land sale contract between Harris Todman and James Moorhead by specific performance is justified in this case.

The Heirs assert that Todman was never paid the contract price and that he was tricked into signing, or was surreptitiously induced to sign the contract of sale. However, the Court has not been presented any modicum, iota or scintilla of evidence to substantiate this allegation. Without substantive and concrete evidence supporting this assertion, specific enforcement of the land sale contract provides the most equitable relief, and requires the transfer of the property from Harris Todman's Estate to the Moorheads. Furthermore, it is a common principle of law that when real property is the subject matter of an agreement, the legal remedy of damages is assumed to be inadequate, because each parcel of land is unique, and it is highly unlikely that an identical parcel of land could be purchased in substitution. Therefore, specific performance of the contract of sale is warranted in this case. To decide otherwise will unquestionably result in unjust enrichment to Decedent Harris Todman's Estate, because Todman would have retained the monies paid pursuant to

---

[5] Contract of Sale dated May 22, 1971, at paragraph 3 says in pertinent part, "... Purchaser on behalf of himself and Christian R. Moorhead, has paid or caused to be paid to Seller the full consideration of Twenty Thousand Dollars ($20,000.00), for the conveyance of both of said parcels of land ..."

the terms of the contract, while simultaneously his estate would retain ownership of Parcel 14 Estate Emmaus.

## C. EQUITABLE REMEDY OF CONSTRUCTIVE TRUST

██ "[A] plaintiff could seek restitution *in equity,* ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Skretvedt v. E.I. DuPont De Nemours,* 372 F.3d 193, 211 (3d Cir. 2004). *See also* RESTATEMENT OF RESTITUTION § 160, Comment a, at 641-642. In the case of the constructive trust, a court of equity could then order a defendant to transfer title to the party who was, in the eyes of equity, the true owner. *Id. See also* RESTATEMENT OF RESTITUTION § 215, Comment a, at 867.

██ 'Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises.' *In re Pemaquid Underwriting Brokerage, Inc.,* 319 B.R. 824, 843 (Bankr. D.N.J. 2005) *quoting* RESTATEMENT (FIRST) OF RESTITUTION § 160 (1937). 'A constructive trust does not, like an express trust, arise because of the manifestation of an intention to create it, but it is imposed as a remedy to prevent unjust enrichment.' *In re Pemaquid,* 319 B.R. at 843 quoting RESTATEMENT (FIRST) OF RESTITUTION § 160 (1937), comment a.

> One instance of where a court will impress a constructive trust is where a person holding title to property is subject to an equitable duty to convey it to another person on the ground that he would be unjustly enriched if he were permitted to retain it. The trust is imposed not because of the intention of the parties, but because the person holding the title to property would be unjustly enriched if he were permitted to keep the property. To prevent such unjust enrichment, an equitable duty to convey the property to another is imposed upon him.

*In re American Int'l Airways, Inc.,* 44 B.R. 143, 146 (Bankr. Pa. 1984) *citing In re Angus,* 9 B.R. 769, 771 (Bankr. D. Ore. 1981). *See also* RESTATEMENT (FIRST) OF RESTITUTION § 160 (1937).

179

Furthermore, a constructive trust is "an equitable remedy compelling a person who has property to which he is not justly entitled to transfer it to the person entitled" to it. *United States v. Pegg*, 782 F.2d 1498, 1499 (9th Cir. 1986); See also 76 AM. JUR. 2D *Trusts* § 221 (1975)). Similarly, it is an equitable remedy commonly sought and granted in cases of unjust enrichment. *Skretvedt*, 372 F.3d at 210 (3d Cir. 2004); *In re Morris*, 260 F.3d 654, 667 (6th Cir. 2001). Importantly, a constructive trust may be imposed against one who has been unjustly enriched, even though he is guilty of no wrongdoing. *Qualchoice, Inc. v. Rowland*, 367 F.3d 638, 649 (6th Cir. 2004).

The circumstances in this case creates a constructive trust. Undeniably, if this Court allows the Estate to retain title to Parcel No. 14 Estate Emmaus, the Estate would be unjustly enriched, because Todman has already received the proceeds from the sale of the property, and his estate would still possess the property, which has unquestionably increased in value. Therefore, to rectify the situation, the Court concludes that the Estate now has a legal duty to convey Parcel No. 14 Emmaus to Moorhead, in accordance with the land sale contract.

The Heirs argue that the Decedent did not have the power to convey any interest in the property, including an equitable interest, because he was never in actual possession of the property during his lifetime.[6] This argument is specious, nonmeritorious, and contrary to established case precedent and statutory law. The Heirs have offered scant legal authority to substantiate their position, relying exclusively on Title 15, Section 84 of the Virgin Islands Code. Nonetheless, this Court concludes that the Heirs' categorical reliance on this statutory provision is misplaced.

Title 15 V.I.C. § 84 states in pertinent part that "[t]he real property of a deceased person ... *not devised*, shall descend ..." (Emphasis added) Arguably, it is unclear from reading Todman's December 16th, 1977 Last Will and Testament whether Parcel No. 14 was intended to be devised in the Second Clause along with "[a]ll the rest, residue and remainder of [the] estate, real or personal, legal and equitable." Without evidence to support this conclusion, the Court cannot conclude that Parcel 14 was intended to be devised along with the rest of Todman's

---

[6] *See In the Matter of the Estate of Harris Todman*, Probate No. 90/1987—the Heirs of the Estate of Harris A. Todman's Response to Motion for Order Directing the Administrator to Convey Title, Motion to Strike Claim and Motion for Sanctions, page 4.

Estate through his Will. While Parcel No. 14 is not listed as a specific devise in the Todman's will, it is noteworthy that no real or personal property is specifically listed in the will, and all reference to real property is made in general terms.[7] Moreover, when Todman signed the contract to sell Parcel No. 14 Estate Emmaus and simultaneously accepted twenty thousand dollars ($20,000) from Moorhead as the purchase price for the property, Todman was no longer the owner of the property. Therefore, when he died, Parcel No. 14 could not have been part of the "rest, residue and remainder of Todman's Estate. Accordingly, Parcel No. 14 Estate Emmaus could not be devised by him to another person or his heirs. Interestingly, in a letter dated September 9th, 1992 to Samuel Peterson, Esquire, the Administrator named in Todman's will, Kevin A. Rames, Esquire, prior counsel for Mr. Peterson, concluded that "all real property interests owned by Harris A. Todman at the time of his death were conveyed out to third parties, notwithstanding the apparent intent to convey real and personal property to certain named beneficiaries as is evidenced by his December 16th, 1977 will.[8]

Therefore, it is undeniable that Parcel No.14 passed to Todman on the date of his mother's death, and to Todman's Estate on May 17th, 1985 when the Court ordered that Todman be awarded possession of the property. The Estate is now under a duty to transfer legal title to Parcel No. 14 Estate Emmaus to Moorhead. Furthermore, a prospective heir's assignment of his expectancy may be enforced in equity, provided it has been fairly obtained and is based on sufficient consideration. There is absolutely no evidence, other than the Heirs' assertions, seemingly based on conjecture and supposition, to suggest that Harris Todman was induced to sell Parcel 14 by fraud or trickery. Importantly, this issue was already litigated on the merits in the case of *Harris Todman v. James J.*

---

[7] *See* the Second Clause, which states in relevant part, "All the rest, residue and remainder of my estate, real or personal, legal and equitable ..." *See also* the Fifth Clause, which states in relevant part, "I give my Executor full power to sell, lease, convey and mortgage any real property owned by me ..."

[8] *See In the Matter of the Estate of Harris Todman*, Probate No. 90/1987, File I, letter from Kevin A Rames, Esquire to Samuel C. Peterson, Esquire, dated September 9th, 1992.

*Moorhead, et al.,* Civil No. 332/1973 (District Court of the Virgin Islands),[9] and is now *res judicata.*

Although the Decedent's interest in Parcel No. 14 Estate Emmaus was an expectancy interest at the time the parties entered into the land sale contract, the Decedent's agreement to convey the parcel was a valid agreement to, at a future day, convey the parcel. The language is sufficiently unambiguous as to this intention, stating that "Seller will within 30 days after adjudication in the pending probate proceedings in the Estate of Caroline George ... convey to Purchaser or his assigns Parcel 14 of Estate Emmaus by warranty deed in substantially the same form as the conveyance ... of Parcel 13 ..."[10] Furthermore, the Contract also expressly states, "[e]quitable title and possession of Parcel 14 are hereby granted and transferred to Purchaser, his heirs and assigns ...," and this is supported by sufficient consideration.

 Therefore, when the Decedent died, legal title to Parcel No. 14, Estate Emmaus did not pass directly to his Heirs upon the complete administration of Caroline George's estate, because the property was not a part of Decedent's estate. Instead, it passed to James Moorhead because the Decedent had previously sold his expectancy in Parcel No. 14 for the valuable consideration of Twenty Thousand Dollars ($20,000.00). Decedent received the purchase price, but was unable to convey title to James Moorhead before he died. The Estate, having the obligation to pay all "debts and legacies" of the deceased, must convey the legal title to the buyer, his heirs or assigns.[11]

## D. COLLATERAL ESTOPPEL AND RES JUDICATA

Finally, before this Court are the issues of the allegations of fraud inducing Todman to sign the land sale contract, and whether Judge

---

[9] *See* Judgment dated September 19th, 1976, dismissing Harris Todman's Complaint, alleging, *inter alia,* at Count I, that his "signature on said Warranty Deed was obtained by defendant Moorhead by undue influence in violation of the fiduciary character of the confidential relationship ...," Count IV, which states that "defendant Moorhead willfully, maliciously and wantonly converted plaintiff's land to his own use ..."

[10] *See* Contract of Sale May 22, 1971, at number 2, recorded at the Office of Recorder of Deeds for St. Thomas and St. John on April 2, 1985, in Book 26-T, Page 145, No. 1253.

[11] 15 V.I.C. § 84 states in pertinent part, "[t]he real property of a deceased person, male or female, not devised shall descend, and the surplus of his or her personal property, after payment of debts and legacies ..."

Alphonso A. Christian's August 17th, 1998 Order, which granted the Estate of Harris Todman permission to convey title to Parcel No. 14 Estate Emmaus, St. John, United States Virgin Islands to the Moorheads, are subject to the doctrines of collateral estoppel and res judicata.

 "Traditionally, the doctrine of res judicata or claim preclusion, provides that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (*quoting Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 414, 66 L. Ed. 2d 308 (1980)) (applied in the context of § 1983 actions). "Res judicata must be distinguished from the very similar but distinct doctrine of collateral estoppel, which is also known as issue, rather than claim, preclusion." *Id.* "As defined in *Allen*, '[u]nder collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *Id.*

 In this case, the Heirs assertions that Mr. Todman was never paid the full price for the land, and that he was tricked into signing the contract of sale are subject to collateral estoppel, because those issues were previously decided in the case of *Harris Todman v. James J. Moorhead, et al.,* Civil No. 332/1973 (Dist. Ct. V.I. 1976). In that case, the decedent Harris Todman filed a complaint against the buyer of the property, James Moorhead and others, asserting *inter alia,* that Todman's signature on the Warranty Deed was obtained by defendant Moorhead employing undue influence in violation of the fiduciary character of the confidential relationship between James Moorhead and Todman, and that Moorhead willfully, maliciously and wantonly converted plaintiff's land to his own use. In an Order dated September 10th, 1976, after a full hearing on the issues, the late District Court Chief Judge Almeric L. Christian dismissed Todman's complaint. No timely appeal was perfected from Judge Almeric L. Christian's Order. Consequently, those issues were previously decided, and relitigation of those issues in this action is precluded.

Similarly, Senior Sitting Judge of the Territorial Court, Judge Alphonso A. Christian had already previously decided the issue of the proper ownership of Parcel No. 14, when in his August 17, 1988 Order, he granted permission to convey title to Parcel 14 Estate Emmaus to the Moorheads. Without a cogent and compelling basis to suggest otherwise,

and considering all the evidence produced in this case, this Court concludes that no basis exists upon which to deny the Estate's motion to reaffirm Judge Alphonso Christian's August 17th, 1988 Order. Additionally, it is noteworthy that this case was reopened by Judge Soraya Diase in an Order dated October 4th, 1996, further suggesting that Judge Christian's Order was final and dispositive of the essential issues. In doing so, Judge Diase ordered that no properties were to be conveyed by the Estate without prior Court approval. Thereafter, Tyrone Davis, the Administrator of the Estate at that time then filed a motion to reaffirm the Court's August 17th, 1988 Order. Judge Diase reserved ruling on this motion pending admission of Todman's will. Upon review of Todman's will, this Court finds that it is unclear from reading Todman's Last Will and Testament dated December 16th, 1977 whether Parcel No.14 Estate Emmaus was intended to be devised in the Second Clause of the will along with the rest, residue and remainder of Todman's Estate, or whether it was already the subject of a sale. However, relying on all the evidence before the Court, and the applicable case and statutory law, this Court reaffirms Judge Alphonso Christian's August 17th, 1988 Order granting the Estate permission to convey Parcel 14 to the Moorheads.

### III. CONCLUSION

In light of the foregoing, this Court holds as follows:

(1) Real property interests pass to the heirs immediately upon the death of the intestate ancestor, and can be claimed by those heirs immediately;

(2) It is lawful for an anticipatory owner to contract to sell property before title has passed to him and such a contract is generally enforceable against the anticipatory owner. In such a situation, when real property is the subject matter of the agreement, the legal remedy of damages is assumed to be inadequate, since each parcel of land is unique; thus, specific performance is warranted. The Decedent's receipt of consideration under the contract, in the amount of Twenty Thousand Dollars ($20,000.00), from James Moorhead, warrants the finding of a constructive trust in order to protect Mr. Moorhead's interest in the property. Mr. Moorhead had an enforceable contract for conveyance of the property. This contract is enforceable in equity, and because of the

availability of equitable relief the Estate has a duty to convey the property;

(3) A party may seek restitution *in equity,* ordinarily in the form of a constructive trust where property identified as belonging in good conscience to that party could clearly be traced to particular property in the defendant's possession. A court of equity could then order a defendant to transfer title to property to the party who is, in the eyes of equity, the true owner; and

(4) Judge Alphonso Christian's August 17th, 1988 Order was a final order on the merits of the case. Therefore, this Court is compelled to reaffirm the Order granting permission to convey title dated August 17th, 1988, and orders the Administrator of the Estate to transfer title to Parcel No. 14 Estate Emmaus.

Accordingly, the Estate's Motions to Re-Affirm Order dated August 17th, 1988, and for an Order Directing the Administrator to Convey Title to the Moorheads are GRANTED, and the Estate's Motion for Sanctions is denied. An appropriate Order will follow.