IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
October 31, 2024 03:23 PM
ST-2009-CV-00375
TAMARA CHARLES
CLERK OF THE COURT



### IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS AND ST. JOHN

MICHAEL LEWIS, JR., MEDINA ROGERS, )
as Trustee for DELON TYRONE LEWIS, )
and INGRID ROGERS-LAKE, )
)
                  **Plaintiffs,** )     **CASE NO. ST-09-CV-00375**
)
      v. )
)     Action for Partition of Real
)     Property
PATRICIA M. ROGERS, FIRSTBANK )
PUERTO RICO, and LAURENT LAKE, )
)     *Cite as* **2024 VI Super 48**
                **Defendants.** )
_____)

STYLISH WILLIS, ESQ.
Jegge Gut Gade #1
P. O. Box 6616
St. Thomas, U.S.V.I. 00804
*Counsel for Plaintiffs*

JUDITH L. BOURNE, ESQ.
THE BOURNE LAW OFFICE, PLLC
19 Norre Gade, P.O. Box 6458
St. Thomas, U.S.V.I. 00804
*Counsel for Defendant Patricia Rogers*

**CARTY, Senior Sitting Judge**

### MEMORANDUM OPINION
(Filed October 31, 2024)

¶1. **THIS MATTER** is before the Court upon remand from the Supreme Court of the U.S. Virgin Islands. On August 27, 2020, the Supreme Court remanded this matter for further proceedings to specifically address certain issues raised by the parties and to further quantify and explain the monetary distributions assessed to each party. In this case, Plaintiffs seek to partition two real properties situated at Parcel No. 1-104 Estate Wintberg, No. 3 Great Northside Quarter, St. Thomas, Virgin Islands ("Wintberg") and Parcel No. 137 Estate Hospital Ground, Kings Quarter, St. Thomas, Virgin Islands ("Hospital Ground" or collectively referred to as "Subject Properties"). A bench trial was held on December 1, 5, and 6, 2016. The court heard the sworn testimonies of Ingrid

Rogers-Lake, Medina Rogers, Michael Lewis, Jr, Dionne Nelthropp and Patricia M. Rogers.[1] At the conclusion of the trial, the Court took this matter under advisement and permitted the parties to submit post-trial briefs, memorialized in an Order by this Court entered December 22, 2016. Briefs were submitted on January 20, 2017. Each party presented testimony, exhibits, and oral arguments; and based on the evidence, the Court found partition in favor of the Plaintiffs is appropriate.

¶2. In the Plaintiffs' Petition for Partition filed on August 11, 2009, Original Plaintiff Sandra Rogers-Joseph[2] and Plaintiffs contend Defendant Patricia Rogers failed to distribute their rightful portions of the rental income from the properties to them and therefore Defendant should convey her one-third interest in the properties, as an offset, to Plaintiffs upon proof of the value of Defendant's proportionate share. Plaintiffs sought a referee for the purpose of determining the fair market value of both properties, or alternatively moved the court to accept the appraisal report values. In her counterclaim, Defendant Patricia Rogers contends she should be compensated for services provided since she maintained the properties, paid expenses on both properties, addressed the demands of the tenants and preserved the properties for the benefit of the parties. She further contends she should not be responsible for the mortgage or loans secured by Plaintiff Ingrid Rogers-Lake as those were to the benefit of Ingrid Rogers-Lake and her husband.

---

[1] In a Court Order dated November 28, 2016, nominal Defendant FirstBank Puerto Rico only was excused from this matter as their only interest is as a mortgagor over the Subject Properties. Laurent Lake was also a nominal defendant subsequently dismissed as he is the husband of Ingrid Rogers-Lake and named as a mortgagor.

[2] Sandra B. Rogers-Joseph and Ingrid Rogers-Lake were the original plaintiffs in this matter. Sandra Rogers died on March 6, 2010, in Jacksonville, Florida. *See* Pls' Trial Ex. 20 ¶1, Adjudication entered on April 3, 2012, by the Superior Court of the Virgin Islands. On February 7, 2012, Michael Lewis, Jr., in his capacity as the Personal Representative of the Estate of Sandra Bernice Rogers f/k/a Sandra Bernice Joseph was substituted as a plaintiff. A subsequent order was entered on June 11, 2014, *nunc pro tunc* to May 16, 2014, wherein Michael Lewis, Jr. was allowed to proceed as a plaintiff in his name, and Medina Rogers, as trustee for Delon Tyrone Lewis, was added as a plaintiff.

¶3.   In consideration of the evidence and the record, the Court makes the following findings of fact and conclusions of law. Judgment will be entered granting Plaintiffs requested relief of partition of real properties Parcel No. 1-104 Estate Wintberg and Parcel No. 137 Estate Hospital Ground, and order the properties be sold if buy-out options are unattainable. Net proceeds will be equitably distributed according to the parties' respective shares.

## FINDINGS OF FACT

### A. Background Facts

1. Plaintiff Ingrid Rogers-Lake is an adult resident of St. Thomas, Virgin Islands.

2. Sandra B. Rogers-Joseph was a Plaintiff at the time of filing this matter, but upon her death[3] she has since been substituted by her sons, Plaintiff Michael Lewis, Jr., who is an adult resident of the state of Florida and Plaintiff Delon Tyrone Lewis, who is represented by Plaintiff Medina Rogers as Trustee, a resident of the state of Florida.

3. Defendant Patricia M. Rogers is an adult resident of St. Thomas, Virgin Islands.

4. Ingrid Rogers-Lake (Ingrid), Sandra B. Rogers-Joseph (Sandra), and Patricia M. Rogers (Patricia) are sisters.[4] (*Dec. 5. 2016, Trans. p.13*)

5. Medina Rogers and Andrew Rogers are the parents of the three sisters. (*Dec. 5. 2016, Trans. pp.12-13*)

6. The Adjudication of the *Estate of Sandra B. Rogers-Joseph* was entered on

---

[3] Pursuant to the Adjudication, the heirs of Sandra Rogers-Joseph, Michael Lewis, Jr. and Delon Tyrone Lewis, inherited one-half each of her one-third interest in the Subject Properties which represents a one-sixth interest.

[4] For the purpose of clarity, the Court will interchangeably refer to the siblings by their first names as all individuals in this family share the same last name.

April 3, 2012, by the Superior Court of the Virgin Islands, with Michael Lewis, Jr. and Delon Tyrone Lewis each receiving a ½ undivided interest in their mother's estate.[5]

7. Upon the death of Original Plaintiff Sandra Rogers-Joseph and pursuant to the Adjudication of her estate in the Superior Court of the Virgin Islands, *Case No. ST-2010-PB-00086*, her property interest in the Subject Properties was evenly distributed to her sons, Plaintiffs Michael Lewis, Jr. and Delon Tyrone Lewis[6] on April 3, 2012, as tenants in common. This conveyance was recorded on June 14, 2013, as Document No. 2013004854 with the Office of the Recorder of Deeds for the District of St. Thomas and St. John.

8. On December 17, 1993, Andrew Rogers (hereinafter "Rogers") executed and delivered a promissory note in favor of Chase Manhattan Bank in the amount of $34,000 on Parcel No. 1-104 Estate Wintberg, St. Thomas, Virgin Islands. *(Def. ex. 2, admitted by stipulation)*.

9. At some point, Rogers defaulted on the loan and Chase Manhattan Bank brought an action against Rogers. Default Judgment was entered against him in favor of the Bank on March 20, 2000. *(Def. ex. 2)*.

10 As a result, Rogers sought financial assistance from Ingrid in an attempt to prevent foreclosure.

11. On July 2, 2002, Rogers conveyed a Deed of Gift to 1-104 Wintberg to his daughter, Plaintiff Ingrid Rogers-Lake, which was recorded on July 18,

---

[5] *In the matter of the Estate of Sandra Rogers-Joseph*, ST-2010-PB-00086.

[6] Delon Tyrone Lewis had not reached the required age in accordance with the Last Will and Testament of Sandra B. Rogers-Joseph. As such, his interest was held by his grandmother, Medina Rogers, instituted as the Trustee by Order dated June 11, 2014.

2002, as Document No. 2002003852 with the Office of the Recorder of

Deeds for the District of St. Thomas and St. John. The legal description

of the Wintberg property is:

> Parcel No. 1-104 Estate Wintberg
> No. 3 Great Northside Quarter
> St. Thomas, Virgin Islands
> Consisting of 10,500 sq. ft more or less
> As shown on P.W.D. Drawing No. A9-81-T68

*(Pl. ex. 1)*

12. On July 17, 2002, Ingrid Rogers-Lake and her husband Laurent Lake

obtained a mortgage on the Wintberg property in the amount of

EIGHTY-TWO THOUSAND, FORTY-FIVE DOLLARS ($82,045) from Banco

Popular de Puerto Rico, which was recorded on July 18, 2002, as

Document No. 2002003853 with the Office of the Recorder of Deeds for

the District of St. Thomas and St. John. *(Pl. ex. 2)*

13. On August 3, 2005, Rogers conveyed a Quitclaim Deed to the Hospital

Ground property to two daughters, Sandra B. Rogers-Joseph and Patricia

M. Rogers, which was recorded on September 22, 2005, as Document No.

No. 2005009734 with the Office of the Recorder of Deeds for the District of

St. Thomas and St. John. The legal description of the Hospital Ground

property is:

> Parcel No. 137 Estate Hospital Ground
> Kings Quarter
> St. Thomas, Virgin Islands
> Consisting of 3,648 sq. ft more or less
> As shown on Measure Brief Dated 12/30/63

*(Pl. ex. 15)*

14. On April 7, 2006, Plaintiff Ingrid Rogers-Lake conveyed a Deed of Gift to

herself and her two sisters, Defendant Patricia M. Rogers and Sandra Rogers-Joseph, granting each a 1/3 interest in Wintberg as tenants in common. This conveyance was recorded on May 5, 2006, as Document No. 2006004387 with the Office of the Recorder of Deeds for the District of St. Thomas and St. John. *(Pl. ex. 14)*

15. On April 7, 2006, Patricia M. Rogers and Sandra Rogers-Joseph conveyed a Deed of Gift to their sister Ingrid Rogers-Lake, granting her a 1/3 interest in Hospital Ground, thus each party possessing a 1/3 interest as tenants in common. This conveyance was recorded on May 5, 2006, as Document No. 2006004388 with the Office of the Recorder of Deeds for the District of St. Thomas and St. John. *(Pl. ex. 15)*

16. The Wintberg property is a two-level structure consisting of five (5) bedrooms and four (4) bathrooms. It consists of two units with the upper level featuring three bedrooms and two bathrooms, and the lower level featuring two bedrooms and two bathrooms. The lower level lacked a kitchen as of the date of the appraisal of November 22, 2016. *(Def. ex. 1)*

17. The Hospital Ground property is a two-story structure consisting of eight (8) bedrooms and four (4) bathrooms evenly distributed across four rental units.

18. The are three parties to this case and the two properties are so situated that partition by physical division of the properties cannot be made without great prejudice to the parties.

19. Unrelated to this proceeding and unbeknownst to Sandra and Patricia, Rogers had previously deeded another property adjacent to the Wintberg property located in St. Joseph & Rosendahl, St. Thomas, Virgin Islands

to Ingrid Rogers only. *(Dec.5, 2016, Trans. p. 38)*

20. On May 31, 2005, Plaintiff Ingrid Rogers-Lake and Defendant Laurent Lake refinanced the mortgage on Wintberg dated July 17, 2002, in the original principal amount of NINETY THOUSAND DOLLARS ($90,000) with FirstBank Puerto Rico.[7] *(Pl. ex. 6)*

21. FirstBank holds a valid, first priority mortgage on Parcel No. 1-104 Wintberg dated May 31, 2005, as Doc. No. 2005005481 and was modified by a Modification of Note and Mortgage by adding Eleven Thousand Dollars and increasing the loan to ONE HUNDRED ONE THOUSAND DOLLARS ($101,000), dated June 6, 2005, and recorded on June 7, 2005, as Doc. No. 2005005785. *(Pl. ex. 8)*.

22. The monthly payment on this Note Modification was Six Hundred Thirty Dollars and Eleven cents ($630.11). *(Pl. ex. 8)* The mortgage payment was One Thousand, Twenty-nine Dollars and Fifty Cents ($1,029.50).

23. During the time of these property transfers, Sandra was not residing in the Territory and had already relocated to the U.S. mainland sometime in 1996, eventually taking up residence in Jacksonville, Florida.

24. On December 13, 2005, Defendant Patricia M. Rogers and Original Plaintiff Sandra Rogers-Joseph obtained a mortgage on Parcel No. 137 Hospital Ground from FirstBank Puerto Rico in the amount of NINETY-FIVE THOUSAND DOLLARS ($95,000). *(Pl. ex. 13)*

---

[7] Ingrid Rogers-Lake paid in full and satisfied the mortgage with Banco Popular de Puerto Rico, recorded as Document No. 2002003853 with the Office of the Recorder of Deeds for the District of St. Thomas and St. John. Satisfaction and Release of Mortgage, Lis Pendens and Judgment, recorded as Doc. 2002003851 *(Pl. ex. 4)*.

25. FirstBank holds a valid first priority mortgage on Hospital Ground dated December 13, 2005, and recorded on December 13, 2005, as Doc. No. 2005012944.

26. The monthly payment on this mortgage is Nine Hundred Eighty-two Dollars and Ninety-six cents ($983.96). *(Pl. ex. 32)*

27. Defendant Patricia M. Rogers paid the mortgages on both properties during the period of 2006 to 2009. *(Dec. 5, 2016, Trans. pp. 39, 42)*

28. Andrew Rogers died on May 10, 2006. *(Dec. 5, 2016, Trans. p.119)*

29. Sometime during mid-2006, Sandra, Ingrid, and Patricia and in the presence of their mother, Medina Rogers, had a family discussion on how the properties would be managed. *(Dec. 1, 2016, Trans. p. 134).*

30. The parties agreed that Patricia would reside upstairs of 1-104 Wintberg, until the tenant that resided in the downstairs apartment leaves so Patricia would move downstairs and the upstairs unit would be repaired and rented.

31. Mrs. Rogers repeatedly provided what she determined to be management advice to her daughters on keeping the properties rented; and advising them on how to pay down on the mortgage quicker by applying the remaining rent proceeds to the principal, to eventually create residual income sooner for the three sisters. *(Dec. 1, 2016, Trans. pp. 134-139).*

32. Patricia agreed the upstairs level of Wintberg should be repaired before renting the premises. *(Dec. 5, 2016, Trans. pp. 27, 51)*

33. Patricia further agreed that after their father's death, she would move downstairs, repair upstairs and rent it. *(Dec. 5, 2016, Trans. p. 51)*

34. Patricia agreed to collect the rents from the properties and for the bank

statements to be mailed to Sandra. Patricia was responsible for collecting rent, maintaining the property, securing contractors, paying expenses, and distributing net rental income. (*Dec. 5, 2016, Trans. p. 42*)

35. In June 2006, Patricia and Ingrid opened a bank account xxx-xx1205 at Banco Popular. (*Dec. 5, 2016, Trans. pp. 104-105*).

36. Shortly thereafter, Patricia stopped depositing monies into that account because she was not comfortable with having an account with Ingrid. Patricia did not notify Ingrid of closure of the account. (*Dec. 5, 2016, Trans. p. 106*). Patricia deposited the monies into her personal accounts. (*Def. exs. 3,4, & 8*)

37. On August 18, 2009, Patricia opened a bank account at Scotiabank between herself and Sandra for the purpose of depositing rent and writing checks. (*Dec. 5, 2016, Trans. pp. 41, 55*).

38. On December 23, 2014, Dionne Nelthropp, a Virgin Islands realtor, was appointed as the Receiver to collect rents, make bank deposits, pay for the upkeep and maintenance of the properties, effective December 1, 2014. (*Order dated December 23, 2014, nunc pro tunc to 11/12/2014*).

39. Ms. Nelthropp testified the potential rental value of the upstairs unit at 1-104 Wintberg between the years 2006 through 2016 ranged from $1,600 to $2,000. (*Dec. 1, 2016, Trans. p. 233*). Estimated rental income at the lower rate of $1,600 per month over a ten and one half-year period between June 2006 and December 2016 (127 months) amounts to $203,200. An estimate at the higher end of $2,000 amounts to $254,000 over the same 10½ year period.

40. With no adjustments for expenses or tenant losses due to non-payment or non-occupancy, the maximum potential rental income the parties could have received had the upstairs unit at 1-104 Wintberg been rented is $254,000. Likewise at the lower rate of $1,600, the total rental income loss is approximately $203,200.

41. Patricia took out a bank loan in the amount of Ten Thousand Dollars ($10,000). Although she testified the loan was in support of Sandra, there is no documentary or corroborating testimony to support this assertion. *(Dec. 5, 2016, Trans. p. 115).*

## B. Procedural History of Case

42. On August 11, 2009, Sandra B. Rogers and Ingrid Rogers-Lake filed their Petition to Partition in the Superior Court of the Virgin Islands and subsequently filed an Amended Complaint on November 26, 2014. *(See Petition filed August 11, 2009; Amended Complaint filed on November 26, 2014.)*

43. They filed this action requesting partition, by sale, of the two properties if they are not granted the first option to buy out the Defendant's interest and obtain their distributive shares due and owing by Defendant from the Subject Properties.

44. Defendant Patricia M. Rogers was personally served with process of the original Petition on August 17, 2009.

45. On September 9, 2009, Patricia filed an Answer and Counterclaim, and another one on September 15, 2015, followed by several motions during the ensuing years.

46. In the November 26, 2014 Amended Complaint, Plaintiffs sought to join FirstBank Puerto Rico and Laurent Lake as defendants, however they were properly joined and dismissed from this matter as nominal defendants.

C. **Plaintiffs are Entitled to Their Rightful Share of All Net Rent Proceeds; Calculations of Expenditures and Distributive Shares**

47. As of December 2016, the mortgages of the Subject Properties were both paid up to date.

48. On November 22, 2016, Parcel No. 1-104 Wintberg was appraised and valued at Three Hundred Forty Thousand Dollars ($340,000). The Court accepts this as the then-fair market value. (*Def. ex. 1*).

49. On December 29, 2016, Parcel No. 137 Hospital Ground was appraised and valued at Three Hundred Thousand Dollars ($300,000). The Court accepts this as the then-fair market value. (*Pls.' Notice of Filing Appraisal Report p. 4*)

50. All four Hospital Ground units and the downstairs unit of Wintberg have been rented between April 2006 and December 2014.

51. From June 2006 to July 2009, Patricia collected all the rents for four Hospital Ground units and the downstairs Wintberg unit for a total of approximately Three Thousand, Two Hundred Dollars ($3,200) per month. (*Dec. 5, 2016, Trans. p. 66*)

52. Each Hospital Ground unit was rented at Six Hundred Fifty Dollars ($650) per month. (*Def. exs. 23-28, Dec. 5, Trans p. 40*)

53. This represents $2,600 per month for three years and two months for a total of $98,800 collected from Hospital Ground.

54. Patricia collected Six Hundred Dollars ($600) from the downstairs unit at Wintberg during the same period. Therefore, she collected about $22,800 from Wintberg and between the two properties the total sum of $121,600.

55. Since Patricia opened the checking account at Scotiabank on August 18, 2009, no monies collected from June 2006 to July 2009, were deposited

into the Scotiabank account.

56. This account was specifically opened for rent deposits and to pay out expenditures on the properties. (*Dec. 5, 2016, Trans. pp. 57-58).*

57. From August 2009 to December 2014[8], Defendant Patricia M. Rogers collected rents from three Hospital Ground units for a total of approximately One Thousand, Nine Hundred Fifty Dollars ($1,950) per month. (*Dec. 6, 2016, Trans. p.74).*

58. Therefore, the total amount of rental monies Defendant Rogers collected from June 2006 to December 2014 is approximately Two Hundred Forty-Eight Thousand, Three Hundred Fifty Dollars ($248,350).

59. From August 2009 to December 2014, Plaintiff Ingrid Rogers-Lake collected rent from one Hospital Ground unit and the downstairs unit of Wintberg unit for a total of approximately One Thousand, One Hundred Fifty Dollars ($1,150)[9] per month. (*Dec. 6, 2016, Trans. p.74).*

60. Therefore, the total amount of rental monies Plaintiff Ingrid Rogers-Lake collected from August 2009 to December 2014 is approximately Seventy-Four Thousand, Seven Hundred Fifty Dollars ($74,750).

61. Plaintiff Ingrid Rogers-Lake and Defendant Patricia M. Rogers made payments on the mortgages attached to the Wintberg and Hospital Ground properties with the monies collected from rent.

62. Defendant Patricia Rogers paid both mortgages from 2006 to 2009 (*Dec. 6, 2016, Trans. p.75).*

63. The monthly payments on Hospital Ground were $983.96 and appears to have gradually increased to $1,072.94 over the course of the loan. (*Pl. ex. 32)*

---

[8] On December 23, 2014, the Court appointed the Receiver effective December 1, 2014, however, all the lease agreements were dated on the first of the respective month and the record is unclear as to who collected the rent for December. Therefore, the parties will be credited with collecting December rents.

[9] There was a rent decrease from $600 to $500 at Wintberg which appears to have occurred when Ingrid started to collect the Wintberg rent in 2009.

*(Def. ex. 4, check no. 1345)*

64. The monthly payment for the Wintberg property started at $1,029.50 and increased over the period of the loan.

65. From August 2009 until December 2014, Patricia continued paying the mortgage on Hospital Ground only.

66. Based on Defendant's exhibits, if between June 2006 and the end of 2007, the monthly payment was $983.96, and then the increase to $1,072.94 occurred January 2008 through December 2014, Defendant Rogers paid approximately $18,695.24 during the first 19 months. She then paid an estimated sum of $90,126.96, for the latter 84 months at the monthly rate of $1,072.94.

67. Therefore, the total mortgage payments Patricia made towards the Hospital Ground property is approximately One Hundred Eight Thousand, Eight Hundred Twenty-two Dollars and Twenty cents ($108,822.20).

68. From June 2006 to July 2009, Patricia paid approximately $1,029.50, in monthly payments towards the Wintberg property.

69. Defendant's exhibits depict some checks paid to FirstBank in increased amounts up to $1,603.34. However, it is unclear as to what property the mortgage was applied to. Notably, Defendant's exhibits 3,4, and 8 represent her personal accounts where mortgage payments were made from and a large portion of transactions were personal in nature. The record is void of proof of many mortgage payments, but FirstBank represented prior to trial both mortgages were current, hence their dismissal. *See infra* 84.

70. Over the three years and two months, Patricia paid approximately $39,121 on the Wintberg mortgage bringing the combined total mortgage payments made by Patricia to One Hundred Forty-Seven Thousand, Nine Hundred Forty-Three Dollars and Twenty cents ($147,943.20).

71. From August 2009 until December 2014, Plaintiff Ingrid Rogers-Lake paid approximately Sixty-Five Thousand, Eight Hundred Eighty-eight

Dollars ($65,888) in mortgage payments on the Wintberg property.

72. Defendant Patricia Rogers failed to provide an accounting of all rental income and expenses and further failed to produce the necessary receipts to provide a proper accounting.

73. Patricia testified that she never paid Ingrid any monies collected from the rentals and neither did she ever provide her with any accounting. (*Dec. 6, 2016, Trans. p.29.*)

74. At a preliminary hearing conducted on July 10, 2014, Patricia admitted to throwing away receipts, despite the pendency of this litigation for five (5) years. (*July 10, 2014, Trans. p.5).*

75. Patrica further admitted that her son threw away the receipts. (*Dec. 6, 2016, Trans. p. 73)*

76. Patricia testified she was given a quote of $260,000 to replace the Hospital Ground roof which was leaking.

77. She testified the bank loan of $95,000 that she and Sandra were able to qualify for was for the purpose of repairing the roof. They received a bid of $78,684.50 for repairs of the roof and the interior areas of the apartments. However, there is no corroborating testimony or documentary evidence to show how the monies were actually spent. (*Pl. ex. 30)*

78. Ingrid had no property-related expenses.

79. Sandra's expenses to the property consist of a Three Thousand, Eight Hundred Dollar ($3,800) check she wrote to Patricia. This check was earmarked to assist Defendant with property related expenses and was dated June 13, 2007.

80. As previously stated, despite their agreement Defendant never accounted to Plaintiffs for the collections, expenditures, or distributions of rental income. The only items on record as payments to Plaintiffs are as follows:

- 6/12/2007- check no. 147 in the amount of $500 to Sandra Rogers (*Def. Ex. 8*)
- 10/23/2007-check no. 1285 in the amount of $80 to Sandra Rogers
- 11/28/2007-check no. 1300 in the amount of $300 to Delon Joseph
- 02/26/2008-check no. 1327 in the amount of $1,500 to Medina Rogers.[10]

The total documented amount paid out here is $2,330. The check to Medina Rogers is a reimbursement, so it will be credited as property expense. The $500 check issued to Sandra is a distribution of rental income, therefore, the $500 will be credited to Sandra's heirs.

81. Patricia testified the $300 to Delon was a contribution and she could not remember why she gave Sandra $80 therefore, they will not be included in the offsets. (*Dec. 5, 2016, Trans. pp. 127,129-134*).

82. There are fourteen (14) documented expenses of which none were identified by property. The following expenses were provided: On December 20, 2007, and on January 9, 2008, David Augustine was paid $120 and $150 respectively for lawn services. On November 11, 2007, Alson Henry was paid $175 for services associated with a water heater. On January 8, 2008, Conrad Ambrose was paid $2,500 for windows and also paid $1,300 on April 14, 2008. Hekseth Peter was paid $900 on March 10, 2008, and another $900 on May 19, 2008, for work associated with kitchen cabinets. On May 2, 2008, a check was written for $97.98 for the tax on fans brought in for Wintberg. On May 13, 2008, AA Supplies was paid $35.11 for floor wax. On April 2, 2009, a check was issued to Home Depot in the amount of $93.60 for doors for the Wintberg property. On July 18, 2011, a check was

---

[10] Medina Rogers is a Trustee on behalf of a Plaintiff, not a cotenant. The check in the amount of $1,500 is a reimbursement for an expenditure.

written to Robert Quezada in the amount of $1,500 for repairs and painting. On September 26, 2011, Gerome Hippolite was paid $1,000 and another $400 on September 30, 2011, for roof work. On August 23, 2014, Johnson Albert was paid $250 to fix a pump house.

83. The total documented amount Defendant paid in expenses is **$9,421.69; and it was difficult to ascertain what property the expenses are associated with.**

84. As it pertains to the mortgages,[11] the following checks were disbursed to FirstBank from a personal bank account which represents documented payments provided by the Defendant:

| | | |
|---|---|---|
| • Oct. 18, 2007 - | Check no.1288 | $1,029.49 |
| • Oct. 18, 2007 - | Check no.1303 | $1,338.09 |
| • Jan. 4, 2008 - | Check no.1315 | $1,338.09 |
| • Jan. 4, 2008 - | Check no.1316 | $1,338.09 |
| • Jan. 4, 2008 - | Check no.1316 | $88.98 |
| • Mar.10, 2008 - | Check no.1334 | $1,029.50 |
| • April 4, 2008 - | Check no.1345 | $1,029.50 |
| | (same check) | $1,072.94 |
| • May 2, 2008- | (tax on fans) | $97.98[12] |
| • | Mastercard | $1,338.09[13] |

Additional mortgage payments from Defendant's personal bank account were documented as follows:

| | | |
|---|---|---|
| • May 5, 2010 - | Check no. 114 | $963.52 |
| • June 7, 2010 - | Check no. 116 | $1,603.34 |
| • July 7, 2010 - | Check no. 124 | $1,603.10 |
| • Aug. 4, 2010 - | Check no. 133 | $1,602.87 |

---

[11] *See Def. ex. 4*

[12] This represents a tax on the fans to U.S. Customs Border & Protection as the Defendant testified to purchasing fans for the Wintberg property.

[13] Of all the highlighted entries contained in Def. ex. 5, Defendant failed to demonstrate how those expenses are associated with any of the properties. The only relevant entry on the Scotiabank Mastercard is a one-time mortgage payment shown above.

- Sept. 7, 2010 - Check no. 139     $1,602.64
- Oct. 7, 2010 - Check no. 142     $1,602.64
- Dec. 6, 2010 - Check no. 148     $1,602.62

- Feb. 8, 2011 - Check no. 165     $1,601.44
- April 5, 2011 - Check no. 176     $1,601.68
- May 6, 2011 - Check no. 180     $1,601.44
- July 6, 2011 - Check no. 185     $1,601.68
- Aug. 3, 2011 - Check no. 194     $1,601.68

- Mar. 6, 2012 - Check no. 218     $1,243.11
- June 5, 2012 - Check no. 224     $1,243.11
- June 20, 2012 - Check no. 228     $1,241.47

- Jan. 4, 2013 - Check no. 246     $273.61
- Sept. 5, 2013 - Check no. 135     $357.19

Defendant offered into evidence a total of approximately Nine Thousand, Four Hundred Twenty-One Dollars and Sixty-nine Cents ($9,421.69) in property-related expenses.

85. Ingrid had personal credit card debt of $3,776.57 and a loan of $14,441.94 for a total of personal debt in the amount of $18,218.51, at the time of obtaining the loan on the Wintberg property.

86. Ingrid did not collect any rent from Hospital Ground between June 2006 through May 2009. (*Dec. 6, 2016, Trans. p. 67*)

87. From 2009 until the receiver took over in December 2014, Ingrid collected one rent from Hospital Ground and the rent from Wintberg downstairs to pay the Wintberg mortgage. (*Dec. 6, 2016, Trans. p. 74*).

88. No lease agreements were produced for the Wintberg property. However, because Patricia was collecting rent from 2006 to 2009 from the Wintberg

tenant and the sisters agreed for Patricia Rogers to move downstairs, the Court can conclude Patricia violated the verbal agreement by unilaterally choosing not to move downstairs.

89. Ingrid testified she never prevented any tenant from vacating the Wintberg downstairs unit or prevented Patricia from moving into the apartment. (*Dec. 6, 2016, Trans. p.* 73).

90. Despite Patricia having legal authority to ask the tenant to vacate the downstairs premises so that she may live downstairs and rent upstairs, Patricia failed to do so.

91. Patricia testified that upstairs needed major repairs, however she has always maintained the upstairs unit as her place of residence up to and including December 2016.

92. The Court finds several portions of Defendant Patricia Rogers' testimony less than credible, particularly since she took on the responsibility of maintaining both properties, and failed to secure receipts for repairs and items purchased for the maintenance of the properties.

93. Moreover, the Court believes Patricia had complete dominion and control over both properties and intentionally decided not to provide an accounting to any of the Plaintiffs.

94. While the Court recognizes the efforts made by Patricia in securing laborers and using her time to prepare and maintain the apartments, it was also her responsibility to keep receipts and proper documentation to show the type of repairs done, by whom services were rendered, when rendered, and at what cost.

95. Defendant testified of her education and work experience, therefore she knew or should have known the importance of maintaining receipts and other documents pertaining to the repairs, upkeep, and maintenance of the properties.

96. Patricia testified of the importance of keeping Sandra abreast of the bank transactions thus she knew she had to account for income received and money expended. Afterall, nothing was distributed besides a single check to Sandra for $500, hence, it is evident Defendant had no intention of distributing any portion of the net rental income to the cotenants.

97. Even five years after the lawsuit commenced, Patricia presented not even a single receipt or an invoice for maintenance or repairs between 2009 and 2014. The Court can surmise rental properties will, over a five period, require some type of maintenance. Yet, she failed to do so.

98. Defendant had an equitable duty to distribute to Plaintiffs their respective share of the rental income even if the net income was $1.00.

## CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

1. This court has jurisdiction over this civil matter pursuant to Title 4 V.I.C. § 76(a).

2. The subject matter of the claims and defenses are related to real property lying on the island of St. Thomas, United States Virgin Islands, thus venue is proper in this judicial district.

3. The Plaintiffs filed complaints in this Court, thus voluntarily appearing and waiving any objection to personal jurisdiction.

4. Defendant Patricia M. Rogers was properly served on August 17, 2009, filed an Answer and a counterclaim thus the Court has personal jurisdiction over Defendant.

## B. Partition of Real Property

5. The right to partition is codified within Title 28 V.I.C. § 451, which provides in pertinent part:

> When several persons hold and are in possession of real property as tenants in common, in which one of them have an estate of inheritance,... any one or more of them may maintain an action of an equitable nature for the partition of such real property according to the respective rights of the persons interested therein, and for a sale of such real property... if it appears that a partition cannot be had without great prejudice to the owners.

6. Further, § 458 reads, in part:

> If it is alleged in the complaint and established by evidence, or it appears by evidence, without such allegation in the complaint, to the satisfaction of the court, that the property, ..., is so situated that partition cannot be made without great prejudice to the owners, the court may order a sale thereof....

7. The prove partition, a plaintiff must show that he or she has a tenancy in common in real property. *Hodge v. Ramos-Michael,* 2015 V.I. Lexis 170

8. When deciding an action for partition, the Virgin Islands Code clearly mandates that the parties prove their respective rights to the property and that the trial court may only order partition according to those rights. *Bryan v. Bryan,* 2016 V.I. Lexis 44 (V.I. Super 2016)

9. A tenancy in common is the joint ownership of real property by two or more persons, in equal or unequal undivided shares, each person having an equal right to possess the whole property. *Id.*

10. There are two methods in which the court may sever concurrent interests in real property in an action for partition: (1) partition in kind or (2) sale. *Id.* A partition in kind involves a physical division of the property and severance of individual interests of each co-tenant so that after partition, each has a right to enjoy an estate, or dispose of the estate, without hindrance from the other. *Id.* In a partition by sale, the property is sold and the sale proceeds are divided between the parties according to the parties' respective shares. *Id.*

11. Death of a cotenant neither terminates nor suspends the right of the surviving cotenants. *Ottley v. Estate of Bell*, 61 V.I. 480 (2014)

12. Plaintiff Ingrid Rogers-Lake's interest in the Wintberg property vested on July 2, 2002, upon the conveyance of the property by Deed of Gift from her father Andrew Rogers.

13. Defendant Patricia M. Rogers' interest in the Hospital Ground property vested on August 3, 2005, upon the conveyance of a ½ interest in the property from her father Andrew Rogers.

14. Original Plaintiff Sandra B. Rogers-Joseph's interest in the Hospital Ground property vested on August 3, 2005, upon the conveyance of a ½ interest in the property from her father Andrew Rogers.

15. Plaintiff Ingrid Rogers-Lake's interest in the Hospital Ground property vested on April 7, 2006, upon the conveyance of a 1/3 interest in the property from Defendant Patricia M. Rogers and Original Plaintiff Sandra B. Rogers-Joseph. (*Deed of Gift, Pl. ex. 15*).

16. Defendant Patricia M. Rogers' interest and Sandra Rogers-Joseph's interest in the Wintberg property vested on April 7, 2006, upon the conveyance of a 1/3 interest each in the property from Plaintiff Ingrid Rogers-Lake. (*Deed of Gift, Pl. ex. 14*)

17. After the death of Original Plaintiff Sandra Rogers-Joseph, her 1/3 interest in the Subject Properties transferred in proportional share to

Plaintiffs Michael Lewis, Jr. and Delon Tyrone Lewis on April 3, 2012, upon the Adjudication of her estate. (See *Adjudication* entered in Probate case no. ST-2010-PB-00086).

18. The rights of each party have not been challenged and as such has been respectively established as follows:[14]

   a. Plaintiff Ingrid Rogers-Lake having an undivided 1/3 interest in the Subject Properties as a tenant common.

   b. Defendant Patricia Rogers having an undivided 1/3 interest in the Subject Properties as a tenant in common.

   c. Plaintiff Michael Lewis, Jr. having an undivided 1/6 interest in the Subject Properties as a tenant in common.

   d. Plaintiff Delon Tyrone Lewis having an undivided 1/6 interest in the Subject Properties as a tenant in common.

19. Plaintiffs, as tenants in common with each other and Defendant Patricia M. Rogers, are entitled to request a judicial partition of both the Wintberg and Hospital Ground properties.[15]

20. As tenants in common, Plaintiffs may pursue an action against Defendant Patricia Rogers for receiving more than her portion of the rents or profits produced by the Subject Properties.

21. Plaintiffs have proven their right to an accounting and proven that Defendant has been unjustly enriched.

22. The Court has found, through documentary evidence and testimony provided, that between June 2006 and December 2014, Defendant Patricia Rogers collected an excess of rental income from the Subject Properties that was not appropriately accounted for nor distributed to

---

[14] Title 28 V.I.C. § 457 explains "[t]he rights of several parties, plaintiffs as well as defendants, may be put in issue, tried, and determined in a partition action. Where a defendant fails to answer, or where a sale of property is necessary, the title shall be ascertained by proof to the satisfaction of the court before the judgment for partition or sale is given."

[15] *See* 28 V.I.C. § 451.

the remaining tenants in common in accordance with each owner's proportional share.

23. A constructive trust exists where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. *In re Estate Todman,* 48 V.I. 166, 179 (VI Super. Ct. 2006) 2006 V.I. Lexis 29, *21-23, 2006 WL 3940589

24. A constructive trust does not, like an express trust, arise because of the manifestation of an intention to create it, but it is imposed as a remedy to prevent unjust enrichment. *In re Pemaquid Underwriting Brokerage,* 319 B.R. 824, 843 (Bankr. D.N.J. 2005) *quoting Restatement (First) Restitution § 160 (1937).*

25. A constructive trust is an equitable remedy compelling a person who has property to which he is not justly entitled, to transfer it to the person entitled to it. Similarly, it is an equitable remedy commonly sought and granted in cases of unjust enrichment. A constructive trust is not a separate cause of action. *90 C.J.S. Trusts § 176, See also, In re Estate Todman,* 48 V.I. 166, 180 (VI Super. Ct. 2006)

26. While unjust enrichment must be pled as a cause of action, constructive trust does not. A constructive trust is an equitable remedy and not a separate, specific cause of action. *St. Luke's Health Network, Inc. d/b/a St. Luke's University Health Network, et al. v. Lancaster General Hospital, et al.,* 2024 U.S. Dist. LEXIS 164116; 2024 WL 4173783. A constructive trust may be imposed against one who has been unjustly enriched, even though he is guilty of no wrongdoing. *In re Estate of Todman,* at 179.

27. A plaintiff could seek restitution *in equity,* ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's

possession." *Skretvedt v. E.I. DuPont De Nemours,* 372 F.3d 193, 211 (3d Cir. 2004). *See also* Restatement of Restitution § 160, Comment *a,* at pp. 641-642. In the case of constructive trust, a court of equity could then order a defendant to transfer title to the party who was, in the eyes of equity, the true owner. *Id. See also Restatement of Restitution § 215, Comment a, at 867.*

28. 'Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises.' *In re Pemaquid Underwriting Brokerage, Inc.* at 843 *quoting Restatement (First) Restitution § 160 [\*\*23] (1937).*

29. "Assumption of liability" means a promise by the transferee of mortgaged real estate, whether made to the transferor or to the mortgagee, to perform the obligation secured by the mortgage. The rights and duties of the parties following a transfer of mortgaged real estate depends on whether the transferee has assumed liability on the mortgage and the obligation it secures. The transferee's assumption of liability need not be in any particular form or follow any particular verbal pattern. Any words indicating the transferee's intent to undertake personal liability for the obligation will suffice. *Restat 3d of Property; Mortgages, § 5.1(a)*

30. Transfer of the pertinent deeds occurred on April 7, 2006. The original titleholder to both properties, Andrew Rogers, died on May 10, 2006. All parties (Ingrid, Patricia, and Sandra) were aware of the mortgages prior to April 7, 2006, and at some point before or after the father's death agreed to continue paying the mortgages and did so.

31. Between June 2006 and December 2014:

a. Defendant Patricia M. Rogers collected a total of Two Hundred Forty-Six Thousand, Four Hundred Dollars ($248,350) in rental income. During this same period Defendant Rogers paid One Hundred Forty-Seven

Thousand, Nine Hundred Forty-Three Dollars and Twenty-two cents ($147,943.22) to satisfy mortgages on both the Wintberg and Hospital Ground properties. As for expenses, she claimed that receipts were thrown away and only offered into evidence $9,421.69 in maintenance and upkeep expenses and $1,500 reimbursement to Medina Rogers over the same period of time, which the Court will accept. She also claimed a one-time distribution in the amount of $500 to Sandra. Hence, if the mortgages, expenses, reimbursement, and distribution are subtracted from the rental income the remaining balance is $88,985.09. Acknowledging Defendant Patricia Rogers' 1/3 interest that entitles her to a proportionate share, the remaining balance of which Patricia has been unjustly enriched by and to be distributed to the co-tenants in common is $59,323.39 to be distributed according to each person's property interest: $29,661.70 for Ingrid; and $14,830.85 each to Michael Lewis and Delon Lewis less $500 given to Sandra.[16]

b. Plaintiff Ingrid Rogers-Lake collected a total of Seventy-three Thousand, Six Hundred ($74,750) Dollars in rental income. During this same period Plaintiff Ingrid Rogers-Lake paid Sixty-Three Thousand, Eight Hundred Eighty-Eight Dollars ($63,888) to satisfy the mortgage in Wintberg. Based on the record, Ingrid Rogers-Lake incurred no property-related expenses. This leaves an excess of Ten Thousand, Eight Hundred Sixty-Two Dollars ($10,862). Acknowledging Plaintiff Ingrid Rogers-Lake's 1/3 interest that entitles her to a proportionate share, the remaining balance to be distributed to the co-tenants in common is $7,241.33 distributed according to each person's property interest, hence,

---

[16] *Walters v. Walters,* 60 V.I. 768,776 (V.I. 2014). In *Walters,* the court reformulated the elements of unjust enrichment to require a plaintiff to prove: (1) that the defendant was enriched, (2) that such enrichment was at plaintiff's expense, (3) that the defendant had appreciation or knowledge of the benefit, and (4) that the circumstances were such that in equity or good conscience the defendant should return the money or the property to the plaintiff.

$3,620.67 to Patricia and $1,810.33 each to Michael Lewis and Delon Lewis.

32. Additionally, based on the testimony of the receiver, the market rental rate of the upstairs unit of Wintberg ranged between $1,600 to $2,000 per month during the years from 2006 to 2016 (*Dec. 1, 2016, Trans. p. 233*). Because Patricia agreed to move downstairs but refused despite the agreement, and had complete authority over the tenant, Patricia caused a substantial loss of rental income. In calculating this loss, the Court factored the conservative amount of $1,600 per month for the 10 ½ years (127 months) as a loss to all tenants in common. Granting a grace period of four months between June 2006, (burial and bereavement period of Mr. Rogers and time to make repairs) through September 2006, and without considering any property-related expenses or downtime due to lack of occupancy, the Court will use the sum of $196,800 ($1,600 × 123 months) which means each tenant in common suffered a loss of an additional $65,600 of rental proceeds.[17] There has been no testimony that Patricia made any effort to have the tenant(s) vacate the premises, neither did she pay rent to reside upstairs.

33. Therefore, the Court will set forth the following two options for partition. Because the properties cannot be partitioned by physical division without great prejudice to the parties, the Court will grant the relief sought by Plaintiffs, permitting them to purchase Patricia's one-third interest. The Plaintiffs have the right to exercise the first option of buying out Defendant

---

[17] In a partition action, a tenant in common who does not have actual possession of the property may compel a cotenant in possession to account for rents and profits received from tenants on the presses. A nonpossessory tenant also may make a claim for a share of the rental value of the premises occupied by a cotenant even without making an express demand on the cotenant in possession to pay rent. *59A Am Jur § 138.* While there is no evidence of an ouster of Plaintiffs, Defendant's delay over a ten-year period clearly demonstrated her intent not to move into the downstairs unit to generate significant rental income upstairs.

Patricia Rogers' interest within 120 days of the date of entry of judgment. The Court will apply the 2016 appraisal values, for the purpose of buy-out options. The Hospital Ground property was appraised at $300,000 and the Wintberg property was appraised at $340,000. Therefore, Patricia's interest in Wintberg is $113,333.33 and $100,000 in Hospital Ground ($213,333.33). Plaintiffs are entitled to a credit of $219,585.09, less Patricia's proportionate share owed by Ingrid. If Plaintiffs are unable to buy out Defendant Patricia Rogers' interest within 120 days, the Defendant, at the expiration of Plaintiffs' 120 days, has the right to buy out the Plaintiffs' two-thirds interest at $426,666, plus $219,585.09 within 120 days.

34. If none of these options are viable, the Subject Properties will be sold by referee pursuant Title 28 V.I.C. § 458. Once the properties are sold, the proceeds of the sales shall be distributed in due order: (1) to pay its just proportion of the general cost of the action (2) to pay the cost of the reference (3) to pay to satisfy the mortgage liens, and other liens, in their order of priority, by payment of the sums due and to become due according to the judgment and (4) the residue among the owners of the property sold, according to their respective shares and as illustrated above.

35. As provided by the mortgage documents for the Subject Properties, recorded as Document No. 20050055481 and Document No. 2005012944, as established by paragraph 18 of both documents, if all or any part of the property or any interest in the property is sold or transferred without Lenders' prior consent, Lender may require immediate payment in full of all sums secured by this security instrument [mortgage instrument].[18]

---

[18] Pl. trial Ex. 6 ¶18, May 31, 2005; Pl. trial ex. 13 ¶18, Dec. 13, 2005.

Upon a sale, the parties are entitled as follows:

a. Patricia is entitled to 33.333% from the net sales proceeds of both the Wintberg and Hospital Ground properties.

b. Ingrid is entitled to 33.333% from the net sales proceeds of both the Wintberg and Hospital Ground properties.

c. Michael Lewis, Jr. and Delon Tyrone Lewis are entitled to 50% each of their mother's share, therefore Michael is entitled to 16.67% and Delon Tyrone Lewis is entitled to 16.67% of the net sales proceeds of both the Wintberg and Hospital Ground properties.

d. Patricia owes, as delineated above, the sum of **EIGHTY-EIGHT THOUSAND, NINE HUNDRED EIGHTY-FIVE DOLLARS AND NINE CENTS ($88,985.09)** to the cotenants.

e. The additional sum of **SIXTY-FIVE THOUSAND, SIX HUNDRED DOLLARS ($65,600)** is owed to Ingrid Rogers Lake and **SIXTY-FIVE THOUSAND, ONE HUNDRED DOLLARS ($65,100)** is owed jointly to Michael Lewis, Jr. and Delon Lewis. These sums represent the loss of rental income over a 10½ year period due Patricia's failure to make the upstairs unit available to be rented.

f. Ingrid owes, as delineated above, the sum of **SEVEN THOUSAND, TWO HUNDRED FORTY-ONE DOLLARS AND THIRTY-THREE CENTS ($7,241.33)** to the cotenants.

36. Ingrid's credit card debt of $3,776.57 and First Bank loan of $14,441.94 for a total of $18,218.51, will not be included in offsets. Those debts result in a wash of the $95,000 loan that was taken out on Hospital Ground as there is no evidence as to how Patricia or Sandra spent those monies. Also, the parties agreed that both mortgages will be paid from the rental income, therefore, those debts have become a non-issue. Any net sales proceeds shall be divided equally into one-thirds.

## C. Conclusion

**WHEREFORE**, pursuant to these Findings of Fact and Conclusions of

Law, judgment is entered in favor of the Plaintiffs. Plaintiffs have prevailed by establishing that in 2006 there was a mutual agreement amongst the parties that Defendant would rent the Subject Properties, collect the rental income, pay both mortgages, pay expenses for upkeep and maintenance, and distribute the net income equally amongst the three siblings. This is consistent with the actual deeds of gift both dated April 7, 2006, where each sister possesses an equal undivided one-third interest in each property.

Based on the testimony adduced at trial, the Court finds Defendant Rogers reneged on her agreement to reside downstairs, rent out the upstairs portion of the Wintberg property, and to provide an accounting and to equally distribute net rental income. The Court finds greater credibility in Medina Rogers' testimony when she testified Patricia stated it was her (Patricia's) turn to live free. (*Dec. 5, 2016, Trans. pp.25, 27; Dec. 1, 2016, Trans. 140*). This supports Patricia's displeasure, as she testified to, upon learning that her father had conveyed the Wintberg property to Ingrid, unbeknownst to her.

The Court finds that Andrew Rogers defaulted on his mortgage payments, and facing foreclosure on the Wintberg property, he solicited the assistance of Ingrid. Had it not been for Ingrid's help in securing a loan to save the property, the family risked losing Wintberg. Had they lost the property there would be no rental income to collect, neither would Patricia have been able to freely reside in the upstairs unit. Although Patricia maintained the properties, procured the services of contractors/repairmen, and collected the rent, she failed to account for and equally share the remaining income with her sisters. The Court believes the parents intended for all three siblings, to share and share equally in the net income of both properties. This was also echoed by their mother, Medina Rogers, as she repeatedly testified to her efforts to have the sisters pay down on the mortgages as quickly as possible to get rid of debt.

There is nothing on the record to suggest that Patricia would be

compensated for her time and effort, or that she is entitled to live freely in the largest income-producing unit, or the co-tenants were willing to forgo their proportionate shares of distribution. If she needed assistance, Defendant could have voiced her concerns and let the parties come to an alternative agreement.

Defendant has utterly failed to account to the cotenants and provide their entitled distributions, despite an equitable duty to convey their respective shares. The Court rejects Defendant's argument that there was no money remaining in the property management account, after all expenses were paid each month such that there was never any net income available for distribution. This Court sits in equity therefore, it is unreasonable for Defendant to seek a set-off of $18,218.51 plus interest, from Ingrid Rogers-Lake when for years and without a conscience, income was collected and nothing was distributed to the Plaintiff responsible for saving the very property that Patricia Rogers is living in freely from foreclosure. Twice, property management bank accounts were opened only to be immediately closed by Patricia or have little activity; and all monies collected to be deposited into her personal accounts. The doctrine of *in pari delicto* precludes a party from seeking relief with unclean hands.

Hence, Plaintiffs are entitled to a constructive trust and their fair share of the net rental proceeds as shown above due to the unjust enrichment of the Defendant. A Judgment of even date accompanies this Opinion.

October 31, 2024

Date

Renée Gumbs Carty
Senior Sitting Judge
Superior Court of the Virgin Islands

ATTEST:
Tamara Charles
Clerk of the Court
By:
Donna D. Donovan
Court Clerk Supervisor 10 / 31 /2024



**FILED**
October 31, 2024 03:30 PM
ST-2009-CV-00375
**TAMARA CHARLES**
**CLERK OF THE COURT**

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## District of St. Thomas/St. John

| | |
|---|---|
| **MICHAEL JR. LEWIS and INGRID ROGERS-LAKE** | Case Number: **ST-2009-CV-00375** |
| **Plaintiffs** | Action: **Partition And Quiet Title** |
| **v.** | |
| **PATRICIA M. ROGERS FIRSTBANK PUERTO RICO and LAURENT LAKE,** | |
| **Defendants.** | |

## NOTICE of ENTRY
### of
### <u>MEMORANDUM OPINION AND JUDGMENT</u>

**To:** Stylish Willis, Esq (via email)      Carol Ann Rich, Esq (via email)

Judith L. Bourne, Esq (via email)

**Please take notice that on October 31, 2024**
**a(n)**      **MEMORANDUM OPINION AND JUDGMENT**
**dated**      **October 31, 2024**      **was/were entered**
**by the Clerk in the above-titled matter.**

**Dated:**    **October 31, 2024**            **Tamara Charles**
                                          **Clerk of the Court**

By:

**Nicole Smith**
**Court Clerk II**